**Regina (Rega) JABLON,**
**Plaintiff-Appellant,**

v.

**DEAN WITTER & CO., and Sydney**
**Turner, Defendants-Appellees.**

**No. 77–2214.**

United States Court of Appeals,
Ninth Circuit.

Feb. 29, 1980.

Marshall A. Rutter, Collins, Gregory & Rutter, Los Angeles, Cal., for plaintiff-appellant.

Michael J. Abbott, Stephens, Jones, La Fever & Smith, Los Angeles, Cal., for defendants-appellees.

Before WRIGHT, HUG and SKOPIL, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This is an appeal from an order of dismissal. Appellant Jablon alleges Dean Witter violated New York Stock Exchange (NYSE) Rule 405 (the "know your customer" rule) [1] and Article III, Section 2 of the National Association of Securities Dealers (NASD) Rules of Fair Practice (the "suitability" rule) [2] in its handling of her margin account. She also charges a violation of Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1975). The district court dismissed the complaint, ruling (1) there is no implied private cause of action under NYSE Rule 405 or the NASD suitability rule, and (2) the Rule 10b–5 claim was barred by the statute of limitations. We affirm.

### FACTS

In 1946, Jablon opened a "margin account" with Dean Witter. She alleges Sydney Turner, her account salesman at Dean Witter, urged her to open it without first inquiring diligently into her financial position, business expertise, or investment goals. She says she was not advised she could close her margin account and thereby avoid paying interest on funds loaned to her by Dean Witter and avoid placing additional funds in her account to meet "margin calls." Finally, she alleges that Turner improperly recommended that she purchase highly speculative securities on margin.

Jablon made numerous stock purchases between 1946 and 1970, including three purchases allegedly based on Dean Witter's recommendation: (1) additional shares of RCA (1965); (2) an unspecified number of

---

1. NYSE Rule 405 (the "know your customer" rule) states:

   Every member organization is required through a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1) to (1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person hold-

   ing power of attorney over any account accepted or carried by such organization.

2. Section 2 of the NASD Rules of Fair Practice (the "suitability rule") states:

   In recommending to a customer the purchase, sale or exchange of any security a member shall have reasonable grounds for believing that the recommendation is suitable for such customer . . . .
   CCH NASD Manual, Art. III, § 2, ¶ 2152.

shares of Lockheed stock (1967); and (3) another 100 Lockheed shares (1970). She argues these purchases were too speculative for her financial position.

Although no stock purchases were made after 1970, Jablon alleges she had repeated margin calls made upon her account through 1974. In 1974 she was unable to meet one call and Dean Witter sold her account. She alleges she lost $39,000 as a result of her investment plan: an initial investment of $23,000, plus additional cash to meet margin calls, offset by $800 remaining in her account.

Jablon contends she was not aware of Turner's alleged misconduct until she consulted legal counsel in 1974.

## DISCUSSION

The Supreme Court recently enunciated the standard for implying private actions. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979). The Court held that customers of securities brokerage firms had no implied cause of action for damages under § 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78q(a). It declared:

> The question of the existence of a statutory cause of action is, of course, one of statutory construction. . . . As we recently have emphasized, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. University of Chicago, supra,* 441 U.S. [677], at 686, 99 S.Ct. [1946], at 1953. Instead, our task is limited solely to determining whether Congress intended to create the private right of action . . . .

99 S.Ct. at 2485.

This rule of statutory construction was extended by the Court in *Transamerica Mortgage Advisors, Inc. v. Lewis,* —— U.S. ——, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979). The Court ruled that § 206 of the Investment Advisors Act, 15 U.S.C. § 80b–1 *et*

*seq.*, created no private cause of action for damages and explained:

> The question whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction. . . . While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action in order to provide remedies thought to effectuate the purposes of a given statute, *e. g., J. I. Case Co. v. Borak* [377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423], *supra,* what must ultimately be determined is whether Congress intended to create the private remedy asserted. . . .

—— U.S. at ——, 100 S.Ct. at 245.

The Supreme Court's decisions in *Touche Ross* and *Transamerica* reflect a restrictive approach to implying private rights of action. Although those cases involved statutes rather than stock exchange rules, we think the same approach should apply in this case.

Because the stock exchange rules were not enacted by Congress but by the exchange acting on authority delegated by Congress, a two-step inquiry is necessary: (1) whether Congress intended to delegate authority to establish rules implying a private right of action; (2) whether the stock exchange rules were drafted such that a private action may legitimately be implied. We need not decide today whether the *Transamerica* test should be applied to the second step because we hold that Congress did not intend to create private rights of action for violation of stock exchange rules.

### The Stock Exchange Rules

The Securities Exchange Act does not expressly authorize private actions for stock exchange rule violations. Prior to *Transamerica* and *Touche Ross*, courts and commentators found a statutory basis for implying private actions for exchange rule violations under §§ 6(b) and 27 of the Securities Exchange Act.[3] Section 6(b)[4], requir-

---

3. *See, e. g., Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135 (7th Cir.), *cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969); *Geyer v. Paine, Webber, Jackson & Curtis, Inc.,* 389 F.Supp. 678

(D.Wyo.1975); Lowenfels, *Implied Liabilities Based Upon Stock Exchange Rules,* 66 Colum. L.Rev. 12, 16–17 (1966).

4. Section 6(b) of the Securities Exchange Act states:

ing exchanges to adopt rules promoting "just and equitable principles of trade," was said to create a duty. A private action was recognized in conjunction with § 27 of the Act[5] which provides that an action may be "brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." This theory is no longer viable.

The Supreme Court specifically rejected a similar theory in *Touche Ross*. Relying on *J. I. Case v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964),[6] plaintiffs argued that defendant Touche Ross had breached its duties under § 17(a) and the rules adopted thereunder. They contended the breach was actionable under § 27. The Court rejected this theory, declaring that § 27 could play no part in implying liability:

> The reliance . . . on § 27 is misplaced. Section 27 grants jurisdiction to the federal courts and provides for venue and service of process. It creates no cause of action of its own force and effect; it imposes no liabilities. The source of plaintiffs' rights must be found, if at all, in the substantive provisions of the 1934 Act which they seek to enforce, not in the jurisdictional provision.

442 U.S. at 577, 99 S.Ct. at 2490.

■ Congressional intent to provide a private cause of action must therefore be found in § 6(b) alone. We find no such intent. The Supreme Court has decided that no private cause of action was intended under § 17(a) of the Securities Exchange Act because it "neither confers rights on private parties nor proscribes any conduct as unlawful." *Touche Ross*, 422 U.S. at 569, 99 S.Ct. at 2486. We believe this reasoning applies with equal force to § 6(b).

Jablon argues that § 6(b) implies a private action because it was intended to protect the public. The Supreme Court rejected a similar public protection argument in *Touche Ross*:

> Certainly, the mere fact that § 17(a) was designed to provide protection for brokers' customers does not require the implication of a private damage action in their behalf.

*Id.* at 2490.

In *Transamerica*, the Court similarly rejected public protection as a basis for implying a private action under § 206 of the Investment Advisors Act:

> Section 206 of the Act here involved concededly was intended to protect the victims of the fraudulent practices it prohibited. But the mere fact that the statute was designed to protect advisers' clients does not require the implication of a private cause of action for damages on their behalf. . . . The dispositive question remains whether Congress intended

---

> No registration shall be granted or remain in force unless the rules of the exchange include provision for the expulsion, suspension, or disciplining of a member for conduct or proceeding inconsistent with just and equitable principles of trade, and declare that the willful violation of any provisions of this chapter or any rule or regulation thereunder shall be considered conduct or proceeding inconsistent with just and equitable principles of trade.

Securities Exchange Act § 6(b), 15 U.S.C. § 78f(b) (1964).

5. Section 27 of the Securities Exchange Act states in part:

> The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

Securities Exchange Act § 27, 15 U.S.C. § 78aa (1964).

6. In *Borak*, the Court implied a cause of action for a violation of § 14(a) of the Securities Exchange Act. The Court relied largely on the remedial purposes of the Act, and on § 27 of the Act. The Supreme Court in *Touche Ross* declared that it was abandoning this approach:

> To the extent our analysis in today's decision differs from that of the Court in *Borak*, it suffices to say that in a series of cases since *Borak* we have adhered to a stricter standard for the implication of private causes of action, and we follow that stricter standard today. . . . The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law.

442 U.S. at 578, 99 S.Ct. at 2490.

to create any such remedy. Having answered that question in the negative, our inquiry is at an end.

—— U.S. at ——, 100 S.Ct. at 249.

Because we find no Congressional intent to provide a private action for violation of stock exchange rules in § 6(b), our inquiry is also at an end.

### The NASD Rules

No provision in the Securities Exchange Act explicitly provides for a private action for violations of stock association rules. Jablon argues that a private right is implicit because § 15A(b)(6)[7] of the Securities Exchange Act, requiring a stock association to adopt disciplinary rules, establishes an actionable duty under § 27.[8] As we have noted, the Supreme Court has held that an implied private action cannot be predicated upon § 27.

Section 15A(b)(6) does not in itself imply that Congress intended to create a private action. Its language, like that of §§ 6(b) and 17(a) of the Securities Exchange Act, "neither confers rights on private parties nor proscribes any conduct as unlawful." *Touche Ross,* 442 U.S. at 569, 99 S.Ct. at 2486. *See also Transamerica,* —— U.S. at ——, 100 S.Ct. at 249. Based upon the standards in *Touche Ross* and *Transamerica,* we conclude there is no implied right of action for an NASD rule violation.

Our conclusion that neither § 6(b) nor § 15A(b)(6) provides private rights of action is further supported by the fact that sections 9(e), 16(b), and 18 of the Securities

Exchange Act explicitly provide private rights of action. The Supreme Court found no implied private action under § 17(a) of the Act because "when Congress wished to provide a private damage remedy, it knew how to do so and did so expressly." *Touche Ross,* 442 U.S. at 572, 99 S.Ct. at 2487.

We believe the entire statutory scheme makes it "highly improbable that 'Congress absentmindedly forgot to mention an intended private action'" in either § 6(b) or § 15A(b)(6). *Transamerica,* —— U.S. at ——, 100 S.Ct. at 247 (quoting *Cannon v. University of Chicago,* 441 U.S. at 742, 99 S.Ct. at 1981 (Powell, J., dissenting)).

### Rule 10b–5

Jablon's final contention involves an alleged violation of Rule 10b–5. She contends that Turner told her the prices of RCA and Lockheed stock would rise and that Lockheed would declare a stock split and raise its dividend. She asserts this amounted to actionable fraud under Rule 10b–5. We need not decide whether her complaint states a cause of action under *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), because we hold that the district court correctly found the applicable three-year statute of limitations had run.[9]

Jablon complains about representations made between 1967 and 1970 yet her complaint was not filed until 1975. She argues that the statute of limitations did not begin to run until 1974 because the fraud was concealed from her until then.

7. Securities Exchange Act § 15A(b)(6), 15 U.S.C. § 78o–3(6) conditions registration of a securities association on a Commission determination that:

(6) The rules of the association are designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, to foster cooperation and coordination with persons engaged in regulating, clearing, settling, processing information with respect to, and facilitating transactions in securities, to remove impediments to and perfect the mechanism of a free and open market and a national market system, and, in general, to protect investors and the public interest; and are not designed to permit unfair discrimination between customers, issuers, brokers, or dealers, to fix minimum

profits, to impose any schedule or fix rates of commissions, allowances, discounts, or other fees to be charged by its members, or to regulate by virtue of any authority conferred by this chapter matters not related to the purposes of this chapter or the administration of the association.

8. *See* Lowelfels, *Private Enforcement in the Over-the-Counter Securities Markets: Implied Liabilities Based on NASD Rules,* 51 Cornell L.Q. 633, 635–36 (1966).

9. Cal.Code of Civil Procedure § 338 provides that certain actions must be brought within three years, including:

4. An action for relief on 'the ground of fraud or mistake. The cause of action in

■ The applicable statute of limitations begins to run when the plaintiff knows the facts constituting fraud:

Under the California statute of limitations for fraud, the three-year period does not begin to run until the plaintiff has actual or constructive notice of the facts constituting the fraud. Constructive notice is knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry.

*Robuck v. Dean Witter & Co.,* (9th Cir. August 31, 1979, slip op. at 3291.)

■■ Witter and Turner assert the statute of limitations defense by motion to dismiss. The defense may be raised by a motion for dismissal or by summary judgment motion. If the running of the statute is apparent on the face of the complaint, the defense may be raised by a motion to dismiss. *Graham v. Taubman,* 610 F.2d 821 (9th Cir. 1979); *Bethel v. Jendeco Constr. Co.,* 570 F.2d 1168, 1174 (3rd Cir. 1978); *Fuls v. Shastina Properties, Inc.,* 448 F.Supp. 983, 986 (N.D.Cal.1978); 2A Moore's Federal Practice ¶ 12.10 (2d ed. 1979).

If the defense does not appear on the face of the complaint and the trial court is willing to accept matters outside of the pleadings, the defense can still be raised by a motion to dismiss accompanied by affidavits. *Rauch v. Day and Night Mfg. Corp.,* 576 F.2d 697 (6th Cir. 1978). Rule 12(b)(6) Fed.R.Civ.P. permits the court to consider a motion to dismiss accompanied by affidavits as a motion for summary judgment. If the motion is treated as one for summary judgment, all parties shall be permitted to present all material pertinent to the motion. Rule 56 Fed.R.Civ.P.

If the defense is not apparent on the face of the complaint and the motion to dismiss is not accompanied by acceptable affidavits,

an appropriate summary judgment motion may be employed.

■ A motion under Fed.R.Civ.P. 12(b)(6) to dismiss for failure to state a claim can be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. *Leone v. Aetna Casualty & Surety Co.,* 599 F.2d 566 (3rd Cir. 1979). A motion for summary judgment will be granted if the moving party has demonstrated the absence of any issue of material fact and the right to judgment as a matter of law. *Poller v. Columbia Broadcasting System, Inc.,* 386 U.S. 464, 82 S.Ct. 486, 7 L.Ed. at 458 (1962); *Mutual Fund Investors, Inc. v. Putman Management Co.,* 553 F.2d 620 (9th Cir. 1977).

■ Jablon's allegations show that she had notice of the facts constituting the alleged fraud before 1972. She knew the prices of RCA and Lockheed stock were declining. She alleges that the price of her stocks fell precipitously starting in 1967 and that after a drop in the price of Lockheed stock in 1970 she was advised to buy more. She was necessarily aware of her stocks' declining value because she was periodically required to pay margin calls as a consequence.[10]

By her own account, the inaccuracy of Turner's prediction that Lockheed would declare a stock split and increase its dividend was demonstrated by the fact that neither event occurred. We believe the trial court correctly held that a reasonably prudent person would have realized within two years that Turner's prediction was incorrect.

such case not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake. Cal.Code Civ.Proc. § 338(4) (West 1954).

**10.** Briefly, a margin account is a loan: when one buys stock on margin, one pays only a portion of the total cost of the security. The

broker puts up the remainder of the money, charging the customer a monthly fee on the amount borrowed.

To purchase stock on margin, the NYSE requires that the customer (1) put up at least

The district court properly found that the statute of limitations barred Jablon's 10b–5 action.

*AFFIRMED.*

50% of the cost of the stock, and (2) establish an equity equal to at least $2,000. Once the customer has bought stock on margin, the NYSE requires that the customer's equity in the account always represent at least 25% of the current market value of the stock. Most brokers require a 30% equity.

If a customer's equity falls below the 30% minimum (because the stock has gone down in value), the customer's account becomes subject to a "maintenance margin call." When such a call is made, the customer must deposit cash or collateral to maintain the account. If the customer is unable to meet a margin call, the broker will sell enough stock in the customer's margin account to meet the 30% maintenance requirements.