Daniel A. **PICARD, suing on his own behalf and derivatively on behalf of Accipiter Ltd., doing business as Accipiter, Inc., Plaintiff,**

v.

**WALL STREET DISCOUNT CORPORATION, Ernst & Co., Alan Lederfeind, Fred A. Shorsher, H. Clinton Pollack, Jr., Timothy P. Costello, Carolyn Torregrossa, Warren O'Toole, Bernard R. Sperling, Robert M. Arias, Gregory M. Fitzgerald, Bernard C. Mergentime, Alexander Wohlgemuth, Gery W. Sperling, Lionel C. Bandler, Arnold S. Barysh, Edgar W. Kann, William P. Behrens, Anthony M. Marmora, Ronald C. Luks, and Accipiter Ltd., doing business as Accipiter, Inc., Defendants.**

No. 80 Civ. 7307.

United States District Court,
S. D. New York.

Dec. 1, 1981.

---

Fried, Frank, Harris, Shriver & Jacobson, New York City, for plaintiff; William Josephson, of counsel.

Gainsburg, Gottlieb, Levitan & Cole, New York City, for defendant Ernst & Co.; Michael H. DuBoff, of counsel.

Hoffman, Pollok & Gasthalter, New York City, for Wall Street Discount Corp.; Edward Gasthalter, of counsel.

SOFAER, District Judge:

Defendants have moved to dismiss, alleging (1) that plaintiff Picard has failed to state a claim upon which relief may be granted; (2) that plaintiff has failed to join an indispensable party; and (3) that the Court lacks subject matter jurisdiction. For the following reasons, defendants' motion concerning subject matter jurisdiction is meritorious in part, and the federal claims asserted in the complaint must be dismissed. Defendants' other grounds for dismissal, however, are without merit. As a result, plaintiff's state-law claims—consisting of negligence and conversion—may be tried in this Court based on diversity jurisdiction. 28 U.S.C. § 1332.

According to the complaint, in April 1980 plaintiff agreed with James Masiello to make a capital contribution of 5,000 shares of Polaroid stock to Accipiter, Ltd., in return for a fifty percent ownership interest. James Masiello represented to plaintiff that

he had formed Accipiter, a Delaware corporation, whose net worth was already equal to plaintiff's proposed contribution. Plaintiff and Masiello agreed that the stock would not be sold, but would be hypothecated, and that Accipiter would use the proceeds from the loan as an asset against which Accipiter could borrow for the purpose of trading securities.

In mid-April 1980, Masiello opened a margin and cash account with defendant Wall Street Discount Corporation ("Wall St."), for whom defendant Ernst & Co. operated as a clearing broker. This account was opened in the name of Accipiter by an application listing plaintiff as president and containing a forged signature of "Dan Picard." The application contained purported signatures of other officers none of whom was in fact an officer of Accipiter. Wall St. was also given a letter actually signed by Picard authorizing the transfer of the shares from Paine Webber to Wall St. It also received an apparent authorization to transfer the 5,000 shares of stock from the name of Daniel A. Picard to the corporation's name; this authorization, too, contained the forged signature of "Dan Picard."

Allegedly without Picard's consent, Masiello instructed Wall St. to sell the 5,000 shares of Polaroid stock. Wall St. sold the stock and pursuant to letters written on Accipiter letterhead, bearing the forged signature of "Dan Picard," forwarded the proceeds, in the form of a check payable to Accipiter, to Masiello. The proceeds totalled $121,187.50. Masiello deposited the checks, together with a dividend check in the amount of $750.00, into an account in a Connecticut bank that he had opened in the name of Accipiter. Plaintiff is not a signatory or direct beneficiary of the account; Masiello and two individuals named Ethel and Milton Mersky appear to be the sole signatories.

Plaintiff thereafter allegedly determined that Accipiter "Ltd.," is a Delaware corporation but that the offices of president, secretary, and treasurer are filled by a single individual who denies any knowledge of plaintiff, Masiello, or defendants. Plaintiff contends that neither he nor Accipiter nor Masiello had the authority to authorize the defendants to sell the stock. In fact, according to plaintiff, Wall St. opened the account, and Ernst approved and accepted plaintiff's stock, without completing any of the following procedures. First, defendants did not obtain, from Masiello or from anyone else, personal identification either of Masiello or of any of the other individuals listed on the account application as officers of Accipiter. Second, defendants failed to obtain a copy of the Accipiter corporate charter or by-laws. Third, defendants did not obtain financial statements, credit reports, or bank references of the individuals named on the Accipiter application. Fourth, defendants failed to verify the existence or signatures of those on the account application. Finally, defendants did not compare either of the two forged signatures of "Dan Picard"—on the account application and on the authorization transferring the stock from plaintiff's name to Accipiter—with plaintiff's actual signature, "Daniel A. Picard," on the authorization transferring plaintiff's stock from his Paine Webber account to the account at Wall St. Plaintiff contends that these various acts and omissions by defendants, in opening and maintaining the account through which plaintiff's stock was wrongfully sold, constituted violations of Rule 405 of the New York Stock Exchange, and that the alleged 405 violation is actionable under § 6 of the Securities Exchange Act of 1934, despite the absence in the Act of any express grant of a right of action for violations of stock exchange rules.

The standards by which to decide whether a statute gives rise to an implied right of action are still those articulated in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). In *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and particularly in *Touche Ross v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), however, the Supreme Court indicated that controlling weight should generally be given to Congress's intent. "The ultimate question,"

said the Court in *Touche Ross*, "is one of congressional intent, not one of whether this Court thinks it can improve upon the statutory scheme that Congress enacted into law." *Id.* at 578, 99 S.Ct. at 2490. This change in the controlling standards has required a re-evaluation of federal court decisions, including the Second Circuit decision in *Colonial Realty Co. v. Bache & Co.*, 358 F.2d 178, 181–83 (2d Cir. 1966), holding that a private cause of action may exist under section 6 of the Securities Exchange Act of 1934 for violations of some N.Y.S.E. Rules. *E. g., Van Alen v. Dominick & Dominick*, 560 F.2d 547, 552 (2d Cir. 1977); *Rolf v. Blyth Eastman Dillon Co.*, 424 F.Supp. 1021 (S.D.N.Y.1977), *aff'd on other grounds*, 570 F.2d 38 (2d Cir. 1978); *Starkman v. Seroussi*, 377 F.Supp. 518 (S.D.N.Y.1974); *Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 410 F.2d 135 (7th Cir. 1969), *cert. denied*, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969); *Utah State University v. Bear Stearns*, 549 F.2d 164 (10th Cir. 1977).

The process of reevaluation is already far enough advanced to make clear that no implied cause of action exists under section 6 for violations of NYSE Rule 405. The Ninth Circuit has, in sweeping terms, rejected such a cause of action. *Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir. 1980). Moreover, in a recent Second Circuit case, the three judges on the panel all agreed, in dicta, with the *Jablon* result. Although Judges Friendly and Kearse expressed doubts about the breadth of the *Jablon* opinion, they concurred with Judge Mansfield in the view that no private right of action exists for violations of so general and sweeping a regulatory provision as Rule 405. *Leist v. Simplot*, 638 F.2d 283, 297 n.11 (2d Cir. 1980), *cert. granted*, 450 U.S. 910, 101 S.Ct. 1346, 67 L.Ed.2d 332 (1981); *id.* at 338 (Mansfield, J., dissenting). In addition, two courts in this district have, more narrowly than *Jablon*, rejected a private right of action under Rule 405. *Klitzman v. Bache Halsey Stuart Shields, Inc.*, 499 F.Supp. 255 (S.D.N.Y.1980); *Colman v. D. H. Blair & Co. Inc.*, 521 F.Supp. 646 [Current] Fed.Sec.L.Rep. (CCH) ¶ 98,252 (S.D.N.Y.1981).

Even without regard to the dicta on Rule 405, the majority opinion in *Leist*—the Second Circuit's most recent extended analysis of current Supreme Court doctrine on implied rights of action—cuts strongly against a right of action for violations of Rule 405. The rationale for the majority's holding that a private right of action exists under the Commodity Exchange Act relies principally on two arguments. First, the Commodities Exchange Act imposed specific duties on members of defendant's class in order to protect members of plaintiff's class, and defendant violated those duties. *Id.* at 306–07. Second, the longstanding recognition of a private right of action under the Commodities Exchange Act had been left undisturbed by Congress when passing the 1974 amendments to the Act. *Id.* at 299, 303, 307.

▊ With respect to the first point, section 6 of the Securities Exchange Act, at issue here, does not impose specific duties upon persons in defendants' class for the benefit of members of plaintiff's class. Rather, it explicitly establishes a system of private self-regulation, designed at least as much to protect member firms as to protect investors. *See* Report of Special Study of Securities Markets of the Securities Exchange Commission, H.R.Doc.No.95, 88th Cong., 1st Sess., pt. 1 at 301, 316 (1963); *Utah State v. Bear Stearns*, 549 F.2d 164, 167 (10th Cir. 1977); *Rolf v. Blyth, Eastman Dillon Co.*, 570 F.2d 38, 56 (2d Cir. 1978) (dissenting opinion). Even if section 6 and Rule 405 may be said to create duties on the part of member firms, they nowhere suggest the delegation to investors of rights to enforce those duties, but rather delegate enforcement to the Exchange machinery. *Compare Davis v. United Airlines*, 662 F.2d 120 (2d Cir. 1981) (finding no implied right of action for handicapped persons to enforce section 503 of the Vocational Rehabilitation Act of 1973, which requires federal contractors to take affirmative action to employ the handicapped).

The second argument in *Leist* favoring a private right of action under the Commodi-

ties Exchange Act similarly fails to support a private right of action here. Prior to the 1975 Amendments to the 1934 Act, no clear judicial consensus had arisen that violations of Rule 405 or of similar suitability rules were "per se" actionable under section 6. *See Colonial Realty Co. v. Bache & Co., supra; Gurvitz v. Bregman,* 379 F.Supp. 1283 (S.D. N.Y.1974); *Starkman v. Seroussi, supra; Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra; Schonholtz v. American Stock Exchange,* 376 F.Supp. 1089 (S.D.N. Y.1974). That lack of clear consensus precludes an inference of legislative acquiescence in a private right of action from the enactment of the amendments. *See Leist v. Simplot, supra,* 638 F.2d at 307. *Compare Cannon v. University of Chicago, supra,* 441 U.S. at 698–99, 99 S.Ct. at 1958 (recognizing private cause of action where Congress acts with knowledge of contemporary decisions finding private remedies under similar statutes).

Even if the Second Circuit's *Colonial* decision remained the sole basis for determining whether an implied right of action exists in this case, plaintiff should fail. The Second Circuit made clear in *Colonial* that Congress's reliance on the Stock Exchange to enforce its rules indicates a lack of intent to provide for private enforcement of all Exchange rules. *Colonial Realty Co. v. Bache & Co., supra,* 358 F.2d at 181. Rule 405 is analogous to the rules held nonactionable in *Colonial. See Leist v. Simplot, supra,* 638 F.2d at 296 n.11.

Finally, where Rule 405 has been held actionable, courts have required that the alleged conduct be "tantamount to fraud." *Rolf v. Blyth Eastmen Dillon Co., supra; Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra.* No evidence alleged in this case suggests that any of the defendants was guilty of the sort of fraudulent conduct that courts have indicated would be necessary to warrant implying a private right of action. If a mere failure to exercise care were deemed "tantamount to fraud," egregious negligence would constitute a facially sufficient allegation, necessitating a trial on the merits. "Tantamount to fraud" has not been read so broadly.

■ Defendants also move to dismiss on the ground that plaintiff Picard has failed to join Masiello, an indispensable party. Masiello is merely a joint tortfeasor, however, and therefore not an indispensable party. *See Kerr v. Compagnie De Ultramar,* 250 F.2d 860 (2d Cir. 1953); 3A J. Moore & J. Lucas, *Moore's Federal Practice* § 19.07[1] (3rd ed. 1979). Complete relief can be granted among the parties in his absence without subjecting them to multiple or inconsistent obligations, and a disposition in this action will not impair any interest Masiello might have. *See* Fed.R. Civ.P. 19(a).

■ With respect to defendants' other contentions, even if plaintiff's derivative cause of action is improper, diversity of citizenship has been demonstrated. Plaintiff is a Connecticut citizen, while Wall St. and Ernst & Co. are New York citizens. If the derivative action is treated as proper, diversity jurisdiction also exists. Where a plaintiff brings a derivative action on behalf of a corporation and also names the corporation as a defendant in the action, the parties, for jurisdictional purposes, must be realigned according to their real interests in the litigation. 3B J. Moore & J. Lucas, *Moore's Federal Practice* § 23.1.21[1]. Diversity exists whether Accipiter, Ltd., is realigned as a defendant or as a plaintiff, because Accipiter, Ltd., is allegedly a Delaware corporation whose principal office is located in Delaware and both defendants are citizens of New York.

■ In fact, Accipiter, Ltd., is not properly named as a defendant in this action. The amended complaint alleges no wrongdoing by Accipiter, and none of the plaintiff's claims for relief involves Accipiter. Though Accipiter has been served, it has failed to respond to the complaint either by answer or motion. Moreover, the papers in a related case, *Peregrine Investors v. Wall Street Discount,* No. 81 Civ. 5741 (ADS), indicate that "Accipiter, Ltd." may not be the "Accipiter" company involved in the transactions that generated this litigation. Unless plaintiff or defendants allege a suf-

ficient basis for retaining Accipiter, Ltd. as a party within twenty days of this order, it will be removed from the litigation by the Court. Of course, the naming of a different corporation in an amended complaint, if that is done, might require reconsideration of the basis for this Court's diversity jurisdiction.

In sum, defendants' motion to dismiss the federal causes of action is granted. Fed.R. Civ.P. 12(b)(6). The motions to dismiss for lack of diversity jurisdiction, and for failure to join an indispensable party, are denied. Discovery will proceed forthwith. A pretrial conference will be held on December 18, 1981, to set a trial schedule.

SO ORDERED.