Daniel W. KRASNER, Gregory J. Sheffield, and Moise Katz, Plaintiffs Below, Appellants, and Cross–Appellees,

v.

James R. MOFFETT, Rene L. Latiolais, Terrell J. Brown, Thomas D. Clark, Jr., B.M. Rankin, Jr., Richard C. Adkerson, Robert M. Wohleber, Freeport–McMoRan Sulphur, Inc., and McMoRan Oil & Gas Co., Defendants Below, Appellees, and Cross–Appellants.

No. 569,2002.

Supreme Court of Delaware.

Submitted: April 8, 2003.
Decided: June 18, 2003.

Pamela S. Tikellis (argued), and Robert J. Kriner, Jr., of Chimicles & Tikellis, LLP, Wilmington; Norman M. Monhait, of Rosenthal, Monhait, Gross & Goddess, Wilmington; Goodkind, Labaton, Rudoff & Sucharow, LLP, of counsel, for Appellants.

Alan J. Stone, of Morris Nichols Arsht & Tunnell, Wilmington; Dennis E. Glazer, John J. Clarke, Jr. (argued), and Florence A. Crisp, of Davis Polk & Wardwell, New York City, of counsel, for Appellees Richard C. Adkerson, Rene L. Latiolais, James R. Moffett, B.M. Rankin, Jr., Robert M. Wohleber, and Freeport–McMoRan Sulphur, Inc.

Allen M. Terrell, Jr., of Richards, Layton & Finger, P.A., Wilmington; Terence M. Murphy, Michael L. Rice, and James P. Karen, of Jones Day Reavis & Pogue, Dallas, TX, of counsel, for Appellees Terrell J. Brown and Thomas D. Clark, Jr.

Lewis H. Lazarus, of Morris James Hitchens & Williams, LLP, Wilmington; Robert B. Bieck, Jr., David G. Radlauer, and Amy L. Glovinsky, of Jones, Walker, Waechter, Poitevent, Carrere, & Denegre, LLP, New Orleans, LA, of counsel, for Appellee McMoRan Oil & Gas Co.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

VEASEY, Chief Justice:

In this appeal, we address the question whether a stockholder class action can be dismissed under Chancery Rule 12(b)(6) where the complaint adequately alleges that a majority of the directors recommending a merger to the stockholders had disabling conflicts of interest. The Court of Chancery determined that the complaint alleges facts sufficient to infer that five of the seven directors on the board were interested in the merger. The merger had been negotiated and recommended by a special committee of the two arguably independent directors who voted with the full board to approve the merger agreement and submit it to a vote of stockholders.

The Court of Chancery determined, at the pleading stage, that, notwithstanding the allegations that five of the seven directors were interested, the board's merger recommendation was entitled to the presumption of the business judgment rule. The Court rested its decision on the fact that the special committee of the two independent directors recommended the merger to the full board that included the five allegedly conflicted directors and the two independent directors. We hold that it was reversible error to dismiss the complaint under Rule 12(b)(6). A factual record must be developed to determine what standard of review ultimately applies.

In their cross-appeal, the defendants challenge the ruling of the Court of Chancery that the plaintiffs have adequately alleged a disclosure violation in the proxy material submitted to the stockholders. We agree with that ruling and deny the cross-appeal. Thus, the directors cannot rely at the pleading stage on the stockholder approval of the merger to ratify their actions.

## Facts [1]

This case involves the 1998 merger of Freeport–McMoRan Sulphur, Inc. (FSC) and McMoRan Oil & Gas Co. (MOXY) into McMoRan Exploration Co. (MEC), a holding company created to execute the transaction. The MEC merger represented the reunion of two sister companies. FSC, a leading company involved in mining, terminaling and transporting sulphur, was formed as an independent corporation through a 1997 spinoff from Freeport–McMoRan, Inc. (FTX). MOXY, a company involved in oil and gas exploration, was also formed through a similar spinoff from FTX in 1994.

By 1998, the managers and directors of FSC and MOXY believed the corporate entities could benefit from recombining the two companies as part of one enterprise. FSC had excess capital but could not find value-enhancing investments in sulphur operations. MOXY, by contrast, did not

---

1. The facts relied upon for purposes of this opinion are taken from the plaintiffs' complaint as well as from portions of documents incorporated into the complaint that are not disputed by the parties.

have sufficient funds to pursue fully its potential investment opportunities in oil and gas. The two companies began negotiating a merger transaction to combine FSC's capital with MOXY's investment prospects.

On June 3, 1998, the FSC and MOXY boards of directors met independently and appointed special committees to negotiate a possible merger. The seven directors sitting on the FSC board[2] appointed Directors Terrell Brown and Thomas Clark, Jr. to constitute the FSC special committee to negotiate a possible merger. The five-director MOXY board also appointed two directors to form a special committee. According to the joint proxy statement, both special committees retained legal counsel and investment bankers who were independent of MOXY and FSC. As required by statutory law,[3] the full boards of directors of MOXY and FSC retained the authority to approve any merger agreement.

On July 14, 1998, the MOXY special committee proposed a merger in which MOXY stockholders would receive consideration amounting to 62.5% of the stock in MEC and FSC stockholders would receive the remaining 37.5%. The FSC special committee reviewed the MOXY offer and made a counteroffer on July 22, 1998, proposing MOXY stockholders receive consideration representing only 56% of the MEC stock, with a combined 44% for FSC stockholders. The MOXY special committee responded with a proposed exchange ratio of 58.5% to 41.5% in favor of MOXY stock-

holders. The MOXY special committee also proposed placing a "fiduciary out" provision in the merger agreement for both the MOXY and the FSC board, as well as a termination fee.

The MOXY special committee approved these terms on July 30, 1998. The full MOXY board approved the transaction the next day.

On July 31, 1998, the FSC special committee held a meeting with its advisers. The investment banker opined that the transaction was fair to the FSC stockholders from a financial standpoint. The FSC special committee unanimously determined that the merger agreement was fair to FSC stockholders, and recommended the merger to the entire FSC board. After the special committee recommendation, the full seven-member FSC board met to consider the merger agreement. Following presentations by the investment banker and the special committee, all seven directors unanimously voted to recommend the merger agreement to the stockholders, including the five allegedly conflicted directors and the two arguably independent directors.

To solicit stockholder approval, MOXY and FSC distributed a joint proxy statement to MOXY and FSC stockholders. Among the portions of the statement relevant to this litigation, the FSC board disclosed the initiation of a stock repurchase program in December of 1997 to purchase up to 1 million shares of FSC common stock. The repurchase program was ex-

---

**2.** The former FSC directors were James R. Moffett, Richard C. Adkerson, B.M. Rankin, Jr., Rene L. Latiolais, Richard M. Wohleber, Thomas D. Clark, Jr., and Terrell J. Brown.

**3.** *See* DEL. CODE ANN. tit. 8, § 251(b) (2001) (board of directors must adopt a resolution approving an agreement of merger and declaring its advisability); *see also* DEL. CODE ANN.

tit. 8, § 141(c) (2001) (committee of the board may be granted power and authority of the board except the power and authority to approve, adopt, or recommend to the stockholders "any action or matter expressly required ... to be submitted to stockholders for approval," such as an agreement of merger under Section 251).

panded in May of 1998 to set a target to buy back an additional 600,000 shares.

The FSC and MOXY stockholders approved the merger agreement on November 17, 1998. This action followed.

### Proceedings in the Court of Chancery

A group of former FSC stockholders filed a class action suit against the former FSC directors, FSC, and MOXY, alleging that the former FSC directors breached fiduciary duties owed to FSC stockholders by approving the MEC transaction and that MOXY aided and abetted those breaches of duty. In their complaint, plaintiffs allege that five of the seven directors serving on the FSC board had disabling conflicts of interest in the MEC merger and those conflicts motivated the directors to permit MOXY to receive a disproportionate share of MEC. The plaintiffs also allege that the FSC directors failed to disclose their reasons for pursuing a merger based partly on the market capitalization of FSC when only months before the merger the board initiated a stock repurchase program. According to the plaintiffs, the stock buyback program was designed to acquire FSC stock because the directors believed the stock was undervalued in the market. If true, the complaint adequately alleges that this belief would be material information that the FSC stockholders would want to know in considering the MEC merger.

The Court of Chancery evaluated the plaintiffs' claims on two occasions. In its opinion of January 11, 2001, the Court dismissed the original complaint and granted leave to amend.[4] The Court found that the complaint properly alleged that three directors (Moffett, Adkerson, and Rankin), who were directors of both FSC and MOXY, stood on both sides of the transaction and thus could not be considered independent and disinterested.[5] The Court concluded that the plaintiffs had not alleged facts sufficient to challenge the disinterestedness and independence of the remaining two directors, Wohleber and Latiolais.[6] The Court also decided that the complaint failed to allege that directors Brown and Clark, who constituted the special committee, were interested or lacked independence.[7]

In granting leave to file an amended complaint, the Court stated that in an amended complaint, the plaintiffs had to "add nonconclusory factual allegations that would establish that the Merger is not governed by the business judgment standard, either because (a) the FSC independent committee process did not merit business judgment rule protection, or (b) a majority of the FSC directors who approved the Merger were interested and were not independent."[8]

The plaintiffs amended their complaint to plead with greater particularity facts to impugn the disinterestedness and independence of directors Latiolais and Wohleber. The Court of Chancery held that these new allegations were sufficient to survive the motion to dismiss. Even with the newly pleaded allegations, however, the Court determined that the amended complaint did not survive a Rule 12(b)(6) motion to dismiss. In a bench ruling dated

---

4. *In re Freeport–McMoRan Sulphur, Inc. S'holders Litig.,* Del. Ch. C.A. No. 16729–NC, 2001 WL 50203 at *5 (Jan. 5, 2001) (*"2001 Mem. Op."*).

5. *Id.* at 10, 2001 WL 50203 at *3.

6. *See id.* at 11–14, 2001 WL 50203 at **4, 5.

7. *Id.* at 10–11, 2001 WL 50203 at *4.

8. *Id.* at 15, 2001 WL 50203 at *5.

September 10, 2002,[9] implemented by Order dated September 13, 2002,[10] the Court dismissed the amended complaint with prejudice. It is this judgment of dismissal from which this appeal is taken.

Although the Court of Chancery found that the amended complaint contained facts sufficient to infer that a majority of the FSC board was not free of self-interest in the transaction,[11] the Court concluded that the amended "complaint does not allege facts sufficient to [impugn] the disinterest, independence or processes of the special committee .... [to which] the negotiation of the transaction was specifically entrusted."[12] The Court held that "despite the presence of interested directors, nothing in the complaint justifies the Court [to] allow the case to proceed to the next stage, because there are no facts from which one can infer that the interested directors interfered with the committee's deliberations or negotiations."[13] Accordingly, the Court reasoned that the complaint "would be evaluated under the business judgment standard of review, despite the fact that the complaint satisfactorily alleges that a majority of the board of directors had a conflicting interest in the transaction."[14]

### Issues on Appeal

In the first issue raised on appeal, the plaintiffs contend that the Court of Chancery erred as a matter of law in dismissing the complaint under the business judgment rule. They argue that the allegations of the complaint implicate *ab initio* the entire fairness standard, under which the defendants affirmatively bear the burden of showing fair price and fair dealing. The plaintiffs conclude that a merger recommendation by a special committee to an interested board for a vote by the board does not invoke the business judgment standard. Moreover, according to the plaintiffs, the Court of Chancery could not reach that determination on this record because the defendants could not establish the independence of the special committee based solely on the facts from the pleadings.

The defendants argue that the Court of Chancery properly rejected the entire fairness standard because the interested transaction was not initiated by a controlling stockholder. The defendants further argue that the plaintiffs have conceded the independence of the special committee through the documents incorporated into the complaint.

The defendants raise a second set of issues on appeal by arguing that the dismissal should be affirmed on the independent ground that the FSC stockholders ratified the interested transaction. Because the Court of Chancery recognized that the plaintiffs pleaded a cognizable disclosure claim[15] that would preclude a favorable determination that a fully-in-

---

9. *In re Freeport–McMoRan Sulphur, Inc. S'holders Litig.*, Del. Ch. C.A. No. 16729–NC (Sep. 10, 2002) ("*2002 Bench Ruling*").

10. *In re Freeport–McMoRan Sulphur, Inc. S'holders Litig.*, Del. Ch. C.A. No. 16729–NC (Sep. 13, 2002).

11. *2002 Bench Ruling* at 40.

12. *Id.* at 40–41.

13. *Id.* at 41.

14. *Id.*

15. The trial judge declined to rule on this ground but stated that "the plaintiffs have satisfied me ... that there is an issue as to whether there should have been disclosure of the reasons for the termination of the buyback program. That omission may well have been material." *2002 Bench Ruling* at 42. The trial court also declined to rule on the aiding and abetting issue.

formed stockholder vote ratified the merger, the defendants cross-appeal the trial court's determination that a disclosure violation occurred.

### Plaintiffs Have Pleaded Facts Sufficient to State Breach of Fiduciary Duty Claims

■ We begin by examining the initial conclusion of the Court of Chancery that the plaintiffs alleged facts sufficient to permit an inference that five of the seven FSC directors were interested because of conflicts of interest in the MEC transaction. This Court reviews de novo the decision of the Court of Chancery on a motion to dismiss.[16] Like the Court of Chancery, we assume for purposes of the motion the truth of all well-pleaded allegations, according the plaintiffs "the benefit of all reasonable inferences that can be drawn" from the complaint.[17]

The Court of Chancery correctly held that the plaintiffs have pleaded facts sufficient to infer that three of the FSC directors, Moffett, Adkerson, and Rankin, were interested in the MEC transaction because they served on the boards of the directors of both MOXY and FSC.[18] We also agree that the facts set forth in the complaint allege that two additional directors, Wohleber and Latiolais, had disabling conflicts of interest. Latiolais and Wohleber allegedly received substantial income from other entities within the interlocking directorates of Freeport–McMoRan companies and arguably had an interest in appeasing the MOXY and FSC insiders who also served with Latiolais and Wohleber on the boards of other Freeport companies.[19] Although the allegations regarding their lack of independence may ultimately not be factually sustainable, the plaintiffs are entitled at the pleading stage to the inference that Wohleber's and Latiolais' positions would affect the vote of a reasonable person in the same position because these insiders proposed the MEC transaction.[20]

■ The trial court also correctly concluded that the plaintiffs are entitled to the

16. *Solomon v. Pathe Communications Corp.,* 672 A.2d 35, 38 (Del.1996); *see also Brehm v. Eisner,* 746 A.2d 244, 254 (Del.2000).

17. *Grimes v. Donald,* 673 A.2d 1207, 1214 (Del.1996).

18. *See Aronson v. Lewis,* 473 A.2d 805, 812 (Del.1984) (noting that to be disinterested, the director cannot "appear on both sides of a transaction").

19. In addition to serving as a co-chairman of FSC with Moffett, Latiolais was a Vice Chairman of Freeport–McMoRan Copper & Gold, Inc. (Freeport Copper), a manager and former President and CEO of FTX, and a consultant to the Services Company, an entity then jointly owned by FSC and Freeport Copper. The plaintiffs allege that Latiolais received greater income from services provided to entities other than FSC, and that Latiolais expected to benefit from increased consulting fees provided to the Services Company as a result

of the MEC merger. Wohleber was similarly situated as he served as President and CEO of FSC, and at various times was employed as a Vice President of Freeport Copper, and CFO and Vice President of FTX.

The second-amended complaint alleges that Latiolais and Wohleber received income almost exclusively from the various Freeport–McMoRan companies that were allegedly controlled by Moffett. Although Moffett did not hold a controlling interest in any of the Freeport companies, in the recent past Moffett has served as either chairman or co-chairman of FSC, MOXY, FTX, and Freeport Copper, and, according to the plaintiffs, "is the single most powerful member of management of the related group of companies and largely directs their fortunes and the prospects and compensation of upper level management of all of the related companies." Second–Amended Compl. at ¶ 4.

20. *See Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d 1156, 1168 (Del.1995).

inference that they may have a cognizable disclosure claim relating to the stock repurchase program. Plaintiffs allege that the FSC directors initiated the buyback plan because the directors believed the market undervalued the FSC stock. Only months later, the directors recommended the consideration offered in the MEC merger, which consideration was based partly on the market capitalization of FSC.[21] The defendants point out that the joint proxy statement incorporated into the complaint discloses the repurchase program, including the fact that the stock buyback would not terminate until after completion of the MEC transaction. As the trial court noted, however, an FSC stockholder would find material not only the existence of the repurchase program, but also the directors' possible conflicting views on the market value of FSC stock represented by the stock buyback and the merger.[22]

Defendants maintain that the stock repurchase program was not motivated by a belief that the market undervalued FSC stock but rather was a capital budgeting decision to plow excess cash back into the company. The plaintiffs and the defendants have advanced arguments that require the court to infer the reasons behind implementing the buyback program. Discovery may flesh out these facts, but the plaintiffs are entitled to the benefit of all reasonable inferences from the complaint.[23] We agree with the trial court that the disclosure claim survives the Chancery Rule 12(b)(6) motion to dismiss.

## The Presumption of the Independence and the Effect of the Action of the FSC Special Committee are Not Conclusively Established

■ Because the plaintiffs have sufficiently alleged facts to suggest that the MEC transaction was "not approved by a majority consisting of disinterested directors," the plaintiffs are entitled at the pleading stage to the inferences that may lead to the conclusion that the business judgment rule would not apply to the FSC board's decision to approve the MEC merger and to recommend it to the FSC stockholders.[24] The defendants argue that by using the special committee process the directors have cleansed the conflicts of interest in the transaction and are entitled to the presumptions of the business judgment rule at the pleading stage.

We do not, however, reach that issue because the FSC directors, not the plaintiffs, bear the burden of proving that the MEC merger was approved by a committee of disinterested directors, acting independently, with real bargaining power to

21. During arguments before the Court of Chancery, the trial judge summarized the possible tension between the buyback program and the merger:

> [T]he implicit premise ... [of the buyback program] was that the market price of the stock did not reflect its true value and, therefore, the company was buying back the stock in an effort to raise the price to the true value level. Then, in connection with the merger, the exchange ratio was determined in such a way as to reflect an implicit valuation of FSC based on the current market price, thereby suggesting that management believed, at least at that point, that market price did not reflect true value.

*2002 Bench Ruling* at 37.

22. *See Rosenblatt v. Getty Oil Co.,* 493 A.2d 929, 944 (Del.1985) (stating that an omitted fact is material when its omission "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available") (quoting *TSC Indus. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

23. *See Grimes,* 673 A.2d at 1214.

24. *Aronson,* 473 A.2d at 812; *accord McMullin v. Beran,* 765 A.2d 910 (Del.2000).

negotiate the terms of the merger.[25] The defendants cannot satisfy this burden at the pleading stage of this action.[26]

■ When considering a motion to dismiss under Chancery Rule 12(b)(6), the trial court may not rely on documents outside the pleadings without converting the motion to one for summary judgment, thereby implicating some discovery.[27] In the present case, the defendants attempt to establish the independence of the committee by relying only on portions of the joint proxy statement incorporated into the complaint.[28] Those allegations and incorporated references must effectively negate the plaintiffs' claim as a matter of law.[29]

The description of the special committee provided in the joint proxy statement does not negate plaintiffs' fiduciary duty claims as a matter of law. Although several facts incorporated by reference into the complaint support characterizing the special committee as having acted independently,[30] the complaint also highlights questions left unanswered by the joint proxy statement. The plaintiffs note that the special committee merely recommended the merger to the full board, which voted unanimously to approve the merger. None of the five allegedly conflicted directors abstained from the decisionmaking process.[31] We need not decide at this point in the litigation whether or not abstention was appropriate or necessary.

■ Although the two disinterested directors who comprised the special committee also voted with the full board, the plaintiffs also contend that the proxy statement incorporated into the complaint does not permit the defendants to claim at the pleading stage that the special committee operated independently from the conflicted directors.[32] We need not assess the

25. *See, e.g., Emerald Partners v. Berlin,* 726 A.2d 1215, 1222–23 (Del.1999).

26. *See Paramount Communications Inc. v. QVC Network Inc.,* 637 A.2d 34, 42 n. 9 (Del. 1993) ("Where actual self-interest is present and affects a majority of the directors approving a transaction, a court will apply . . . exacting scrutiny to determine whether the transaction is entirely fair to the stockholders.").

27. *See, e.g., In re Santa Fe Pacific Corp. S'holders Litig.,* 669 A.2d 59, 68 (Del.1995) ("Generally, matters outside the pleadings should not be considered in ruling on a motion to dismiss. . . ."); *see also Malpiede v. Townson,* 780 A.2d 1075, 1090 (Del.2001) ("Under Rule 56 . . . there *may* be an opportunity for either side to submit affidavits or engage in discovery to explore the 'matter outside the pleadings [that has been] . . . presented to and not excluded by the Court.' ") (citing Chancery R. 56(c) and quoting Chancery R. 12(b)).

28. *See* Chancery R. 10(c); *see also Santa Fe,* 669 A.2d at 69.

29. *Malpiede,* 780 A.2d at 1083 (citations omitted).

30. The plaintiffs acknowledge that the only facts that raise a question concerning the independence of special committee directors Brown and Clark are their subsequent seats on the MEC board. The proxy statement also details the rounds of negotiations initiated by the FSC special committee that resulted in better terms for FSC stockholders.

31. *Compare Citron v. E.I. du Pont de Nemours & Co.,* 584 A.2d 490, 504 (Del.Ch.1990) (finding the defendants satisfied their duty of fair dealing partly because the "Merger Committee's deliberations were not influenced by [the controlling stockholder] . . . or . . . management representatives, and throughout the process the Committee acted independently. . . .").

32. Courts typically do not find the facts alleged in a complaint fatal to the action unless the pleading documents present readily ascertainable facts precluding recovery, such as when the face of the complaint reveals a statutory defense barring recovery, or when the plaintiff relies on a legally operative document that unambiguously negates the plaintiff's claim. *See, e.g., Jablon v. Dean Witter &*

strength of the plaintiffs' claims to point out that the joint proxy statement does not "directly portray a complete picture" of the special committee process.[33] Defendants claim that plaintiffs conceded the independence of the committee, but plaintiffs dispute that they so conceded this fact. We need not resolve that issue at this point.

A complaint must survive a motion to dismiss under Rule 12(b)(6) if the plaintiff could ultimately prevail on the merits of their claims based on any reasonable set of facts alleged in the complaint.[34] The independence of the special committee involves a fact-intensive inquiry that varies from case to case.[35] Thus, we cannot assume at the pleading stage that the defendants will carry the burden of establishing independence.[36] Beyond that, it is premature to determine the legal effect—and the resulting standard of review—that would apply if a special committee that operated independently recommended a merger to the full board. Moreover, we need not decide the legal effect of the affirmative vote of the members of the independent committee, who constituted less than a quorum, when voting with the full board to approve the merger.[37]

Co., 614 F.2d 677, 682 (9th Cir.1980) (dismissing complaint because the running of the statute of limitations was evidenced on the face of the complaint); *Hoopla Sports and Entertainment v. Nike, Inc.*, 947 F.Supp. 347, 356 n. 5 (N.D.Ill.1996) (noting that complaint should be dismissed because the pleaded facts revealed the statute of frauds barred the claim); *McWane, Inc. v. Crow Chicago Indus.*, 224 F.3d 582, 584 (7th Cir.2000) (upholding dismissal of claim because the contract upon which the plaintiff relied unambiguously denied plaintiff the rights asserted in the complaint).

**33.** *See In re New Valley Corp. Derivative Litig.*, 2001 WL 50212, at *5 (Del.Ch.).

**34.** *See McMullin*, 765 A.2d at 917.

**35.** *See Kahn v. Lynch Communication Sys.*, 638 A.2d 1110 (Del.1994); *see also Kahn v. Tremont*, 694 A.2d 422 (Del.1997).

**36.** *Cf. Kahn v. Tremont Corp.*, 1992 WL 205637, at *3 (Del.Ch. Aug.21, 1992) *rev'd on other grounds* 694 A.2d 422 (Del.1997). In *Tremont*, the Chancellor denied the defendants' motion to stay discovery, noting that a factual inquiry into the independence of the special committee was necessary even though the defendants alleged that the interested majority of the board merely followed the recommendation of the independent special committee. We agree with the Chancellor's conclusion in the *Tremont* decision that "the independence or not of the members of a special committee is a question of fact that turns not simply upon formality but upon the reality of the interests and incentives affecting the independent directors." We further endorse the assertion in the *Tremont* decision that

> When a plaintiff alleges that an interested transaction has been authorized and alleges a factual basis to conclude that the board of the Company is comprised predominantly of persons whose judgment would be affected by conflicting interest, plaintiff plainly should have the right to discover into the answering facts, relating to the alleged effectiveness of action of any independent committee of directors who are relied upon to protect the proponents of that transaction from justifying the fairness of its terms.

*Id.* (citing *Zapata Corp. v. Maldonado*, 430 A.2d 779, 788 (Del.1981)).

**37.** Under Title 8, Section 141(c) of the Delaware Code, a committee is not authorized to recommend a merger to stockholders, but the entire board must take that action under the merger statutes (e.g. Section 251(b)). DEL. CODE ANN. tit. 8, § 141(c). Under Section 144(a)(1), a statute not cited by either side in this case, if the board in good faith approves an interested director transaction, the transaction is not void or voidable "even though the disinterested directors be less than a quorum." DEL. CODE ANN. tit. 8, § 144 (2001). The application and effect of these provisions must be assessed upon a full record, not at the pleading stage of this action.

### *The Defendants Have Not Established at this Stage of the Case that the MEC Transaction Was Ratified by the FSC Stockholders*

The defendants argue alternatively that the complaint should be dismissed because the MEC transaction was approved by a majority of fully informed FSC stockholders. The FSC directors, however, bear the burden of proving stockholder ratification.[38] The complaint alleges that the directors omitted from the joint proxy statement a shift in their views concerning the market value of FSC. The plaintiffs claim that it is reasonable to infer from the implementation of the repurchase program that the board bought back stock because the market undervalued FSC stock. If true, it is reasonable to infer that the FSC stockholders would have found this information material in considering the MEC transaction because the merger consideration was based partly on the market capitalization of FSC. Absent discovery on the directors' reasons for implementing the stock repurchase program, the directors cannot prove that the MEC transaction was approved by a majority of fully-informed stockholders.

### *Issues on Remand*

We agree with the plaintiffs that it was error for the Court of Chancery to dismiss the complaint with prejudice under Rule 12(b)(6). Such a motion should be granted only if plaintiffs cannot prevail as a matter of law given all the reasonable inferences that could be drawn from the complaint. It is premature for this Court to use the inferences from these allegations as a basis to decide whether this case must ultimately be reviewed on an entire fairness basis—as distinct from a business judgment standard—and which side has the burden of proof.

The rubric that plaintiff invokes is correct as a general matter—namely that when the majority of a board of directors is the ultimate decisionmaker and a majority of the board is interested in the transaction the presumption of the business judgment rule is rebutted.[39] As a further general proposition, when the presumption of the business judgment rule has been rebutted, the entire fairness rule is implicated and defendants bear the burden of proof.[40] Also, our jurisprudence with respect to the requirement that defendants prove entire fairness or prove a valid independent committee process to shift that burden in controlling stockholder transactions[41] may or may not be applicable to this case. Whether or not and to what extent these propositions are applicable in this case will have to be determined on a more complete record and not at the pleading stage. There are possibly several issues that lie ahead after further proceedings in the Court of Chancery.

First, there is the question whether the facts will ultimately show that either Woh-

---

**38.** *See Yiannatsis v. Stephanis,* 653 A.2d 275, 280 (Del.1995) (citations omitted).

**39.** *See e.g., Aronson,* 473 A.2d at 812 (noting that if "the transaction is not approved by a majority consisting of the disinterested directors, then the business judgment rule has no application whatever in demand futility") (quoting DEL. CODE ANN. tit. 8, § 144(a)(1)); *see also Kahn v. Lynch,* 638 A.2d at 1117.

**40.** *QVC,* 637 A.2d at 42 n. 9 (noting that "where actual self-interest is present and affects a majority of the directors approving a transaction, a court will apply ... exacting scrutiny to determine whether the transaction is entirely fair to the stockholders"); *accord Emerald Partners v. Berlin,* 787 A.2d 85 (Del. 2001); *Malpiede v. Townson,* 780 A.2d 1075 (Del.2001).

**41.** *See Kahn v. Lynch,* 638 A.2d at 1117.

leber or Latiolais is interested or not independent as alleged in the complaint. If the Court of Chancery, on a fuller record after remand, concludes that plaintiff's proof fails to rebut the presumption that they are disinterested and independent, the Court of Chancery may conclude that the majority of FSC directors who approved the merger was, in fact, disinterested. The trial court may then be called on to decide whether or not the presumption of the business judgment rule has been rebutted. If the record shows, however, that either of these directors is interested or not independent, the Court of Chancery may decide that the presumption has been rebutted. In that case, the trial court may have to decide the standard of review issues implicated by use of the special committee.

Second, if the facts show that the special independent committee consisting of Brown and Clark in good faith negotiated the merger agreement and recommended it to the entire board for the necessary board vote under Section 251,[42] there are further legal issues. For example, the Court of Chancery may have to determine in the first instance the import of the special committee's negotiation and recommendation here where the independent directors, though less than a quorum, voted with the full board to approve the merger agreement. If the facts show that four or five of the seven directors were conflicted, but Brown and Clark were and remained independent, does their vote as board members constitute valid board action, even though they were less than a quorum?[43]

Third, as to stockholder approval or ratification, the Court of Chancery on a fuller record may have to decide whether or not there was actually a material disclosure violation as alleged. If so, the Court of Chancery may have to determine the ef-

---

[42] The full board must act to approve a merger agreement and recommend it to the stockholders for approval. A committee may not, under Section 141(c), be empowered to perform that necessary board function. *See* DEL. CODE ANN. tit. 8, § 141(c) (2001); DEL. CODE ANN. tit. 8, § 251(b) (2001).

[43] Does Title 8, Section 144(a) of the Delaware Code provide guidance in this connection? Section 144 provides, in part:

a) No contract or transaction between a corporation and 1 or more of its directors or officers, or between a corporation and any other corporation ... in which 1 or more of its directors or officers ... have a financial interest ... shall be void or voidable solely for this reason, or solely because the director or officer is present at or participates in the meeting of the board or committee which authorizes the contract or transaction, or solely because any such director's or officer's votes are counted for such purpose, if:

(1) The material facts as to the director's or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the board of directors or the committee, and the board or committee in good faith authorizes the contract or transaction by the affirmative votes of a majority of the disinterested directors, even though the disinterested directors be less than a quorum; or

(2) The material facts as to the director's or officer's relationship or interest and as to the contract or transaction are disclosed or are known to the shareholders entitled to vote thereon, and the contract or transaction is specifically approved in good faith by vote of the shareholders; or

(3) The contract or transaction is fair as to the corporation as of the time it is authorized, approved or ratified, by the board of directors, a committee or the shareholders.

DEL. CODE ANN. tit. 8, § 144(a) (2001). See *Oberly v. Kirby*, 592 A.2d 445, 466 (Del.1991) ("Section 144 allows a committee of disinterested directors to approve a transaction and bring it within the scope of the business judgment rule"). *Marciano v. Nakash*, 535 A.2d 400, 405 n. 3 (Del.1987) (same.) None of the parties to this case have mentioned Section 144 or these cases in their briefs or at argument before this Court.

fect of that violation on the issue of stockholder approval or ratification.

### Conclusion

The amended complaint should not have been dismissed as a pleading matter under Rule 12(b)(6). The case must be remanded for further proceedings designed to develop a fuller record. As a consequence, some or all of the foregoing factual and legal issues, and perhaps others, may need to be decided by the Court of Chancery in the first instance before they are ripe, if ever, for review by this Court.

The judgment of the Court of Chancery dismissing the complaint under Chancery Rule 12(b)(6) is reversed, and the matter is remanded for proceedings consistent with this opinion. The cross-appeal is denied, and the decision of the Court of Chancery on the disclosure violation is affirmed.