Charles B. **KLITZMAN** and Abraham R. Klitzman, Plaintiffs,

v.

**BACHE HALSEY STUART SHIELDS, INC.,** Defendant.

No. 79 Civ. 6249 (KTD).

United States District Court, S. D. New York.

Sept. 5, 1980.

---

Baskin & Sears, New York City, for plaintiffs; Lawrence A. Mandelker, New York City, of counsel.

Ullman, Miller & Wrubel, P.C., New York City, for defendant; Joel M. Miller, David F. Wrubel, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs Charles and Abraham Klitzman commenced this action against defendant, Bache Halsey Stuart Shields, Inc. [hereinafter referred to as "Bache"] for: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 [hereinafter referred to as "1934 Act"], 15 U.S.C. § 78j(b); and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1975); (2) violation of Art. III, Sections 1, 2 and 18 of the National Association of Securities Dealers Rules of Fair Practices [NASD]; (3) common law fraud; and (4) breach of fiduciary duty. Defendant moves to dismiss plaintiffs' first and second claims under Fed.R.Civ.P. 12(b)(6), and argues that the federal abstention doctrine applies to plaintiffs' claims of fraud and breach of fiduciary duty, and that there would thus be more appropriately resolved in the state court action presently pending.

For purposes of this motion, the facts alleged by plaintiffs are taken to be true and all inferences construed in their favor. Plaintiffs held Class B common stock of Resorts International [hereinafter referred to as "Resorts B"] in two margin accounts with Bache. Defendant required that such accounts maintain equity or "margin" of at least 35 percent. Following a severe decline in the value of plaintiffs' Resort B stock, equity fell below the requisite 35 percent and plaintiffs' accounts were partially liquidated. As Resort B declined further, plaintiffs failed to maintain a 35 percent "margin," and thus, Bache sued the plaintiffs in Supreme Court, New York County, for breach of contract, seeking to recover approximately $130,000, plus interest, representing the debit balance of two margin accounts held by Bache for Charles B. Klitzman (individually) and Charles and Abraham Klitzman (jointly). Three weeks later, plaintiffs commenced the instant action.

According to the Amended Complaint, plaintiffs made several demands for an accounting, but to no avail. Bache's authorized representative, Melvin Friend, assured

plaintiffs that such advice was forthcoming; yet plaintiffs were not informed that a drop in the value of Resort B on October 9, 1979, would adversely affect the equity position of their accounts. (Amended Complaint ¶ 15). Accordingly, plaintiffs conclude that Bache never intended to furnish such advice. (Amended Complaint ¶ 14). On October 10, 1979, defendant informed plaintiffs that 5,000 shares would have to be sold at $41.00 per share in order to maintain the required equity. Apparently, the heart of plaintiffs' claim is defendant's representation that $41.00 was the "best price per share obtainable on that date," when, in fact, Resort B opened and closed in excess of $47.00 on that day. (Amended Complaint ¶ 16). Later that afternoon, plaintiffs were advised that an additional 2,000 shares must be sold at $41.00 per share. When the plaintiffs objected to a $41.00 price, Bache agreed to sell these shares at $43.00, since that "[was] the best price obtainable." While admitting that they consented to this sale, plaintiffs later attempted to cancel the sale upon learning that Resort B was selling "at between $44.50 and $46.50." Although Bache advised plaintiffs that a sale at $43.00 already had been consummated, (Amended Complaint ¶ 18), there is no record on the AMEX of a sale of 2,000 shares of Resort B at $43.00 per share on the afternoon of October 10, 1979. (Amended Complaint ¶ 20). The value of Resort B appeared to have stabilized as of October 11, 1979. Nonetheless, Bache sent the plaintiffs a telegram advising them to deliver $247,491.00 by 2:00 p.m. the following day or face liquidation. This telegram was not received until the 13th. In the interim, on October 12, 1979, at around 11:00 a. m., Melvin Friend of Bache advised plaintiffs that their accounts had adequate equity and thus, that no liquidation was planned for that day unless plaintiffs were notified otherwise. Plaintiffs allege that Friend's 11:00 a.m. advice was "knowingly false" since he never informed them that Bache intended liquidation at 2:00 p.m. that same day, October 12, 1979. In accordance with this 2:00 p.m. plan for liquidation, Bache

sold 20,000 shares at $40.50 per share, and thus, glutted the market for Resort B, diluting plaintiffs' margin accounts. (Amended Complaint ¶¶ 24, 25). Consequently, Bache sent another telegram on October 12, 1979, advising plaintiffs that in order to maintain their two accounts, an additional payment of $224,000 would be required by October 15, 1979. This telegram was found by plaintiffs' secretary on October 13, 1979. Yet, on October 15, 1979, Klitzman was informed that the accounts held "an aggregate $10,000 equity position over defendant's margin requirements." (Amended Complaint ¶ 26). At this time, Bache promised Klitzman that if he and his brother would absolve Bache of any responsibility for the decline in value of plaintiffs' Resort B stock, "defendant would not liquidate the account" pursuant to the October 12th agreement. (Amended Complaint ¶ 27). Plaintiffs agreed and accordingly executed a letter in reliance on Bache's promise and no additional equity was placed in plaintiffs' accounts. (Amended Complaint ¶ 29). Contrary to their promise, Bache threatened liquidation unless $260,000 was delivered by 10:00 a. m., October 17, 1979. No additional funds were paid and Bache thereupon sold 18,250 shares of Resort B at $35.50.

Defendant Bache moves to dismiss plaintiffs' claim under § 10(b) of the 1934 Act on the ground that the Amended Complaint does not adequately allege the necessary elements of scienter and reliance. Bache also argues that the Amended Complaint fails to plead fraud with sufficient particularity to satisfy Fed.R.Civ.P. 9(b).

Taking plaintiffs' allegations to be true for purposes of this motion, I must agree that Rule 9(b) has been satisfied. Bache's deceptive statements about the value of Resort B at the time of liquidation, the inducing of plaintiffs to issue a letter disavowing Bache's liability for plaintiffs' losses, and Bache's inconsistent advice regarding the status of plaintiffs' accounts go beyond mere conclusory allegations of fraud and constitute sufficiently particular allegations of both scienter and reliance. *See, e. g., Schonholtz v. American Stock Exchange,*

*Inc.*, 376 F.Supp. 1089, 1091 (S.D.N.Y.) *aff'd*, 505 F.2d 699 (2d Cir. 1974). Accordingly, plaintiffs' § 10(b) claim withstands defendant's motion to dismiss.

■ Since plaintiffs' common law claims for fraud and breach of fiduciary duty arise out of the same operative facts, joint resolution of these claims would best serve judicial economy. I therefore deny Bache's motion to dismiss these claims and the matters will be tried together in this action.

The question that remains is whether the claims for damages for alleged violations of Articles 1, 2 and 18 of the NASD Rules[1] state either a federal claim or a state claim that can also be addressed under this Court's pendent jurisdiction.

In *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), the Second Circuit refused to imply a blanket private right of action for violations of NASD rules, but held instead that each rule must be examined individually and that such an implied remedy might be possible "when the rule imposes an explicit duty unknown to the common law." 358 F.2d at 182. The Court further stated that a party urging the implication of such a private remedy has a heavier burden of persuasion than when the actions complained of allegedly violate the statute or an SEC regulation. *Id.*

Bache argues that recent Supreme Court decisions, notably *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) and *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), demonstrate "a strong disinclination to imply a private right of action for damages under federal statutes."

■ Plaintiffs argue that the Securities Acts Amendments of 1975, 15 U.S.C. § 78a *et seq.* [hereinafter referred to as "1975 Act"] materially altered the statutory pattern so as to require the recognition of a private remedy under the NASD Rules. I must agree with Bache and hold that such a remedy does not exist.

The 1975 Act conferred upon the SEC the authority to amend the rules of self–regulatory agencies such as NASD if those rules were found to be inconsistent with federal securities laws.

Apparently, the factor that triggered the 1975 Amendments was the "near–disaster" which occurred in our financial markets during the 1968–1972 "paper" and "capital crunch" on Wall Street. One immediate result of these trying times was the enactment of the Securities Investors Protection Act. That statute as amended put one billion dollars of the money of the U.S. Treasury at risk to insure the members of the public who would deal with the various registered brokerage houses, most of whom were members of the national stock exchanges and the NASD and were governed by the system of self–regulation adopted originally in 1934.

The files of the SEC and the hearings before the various committees of Congress clearly disclose that during the paper and capital crunch of 1968–1972, the activities of self–regulatory bodies, principally of the major exchanges, left much to be desired. The 1975 Act was a recognition that the economy of this country insofar as it is affected by the stock market was in need of further regulation.

It is clear to me that the 1975 Act does not require judicial implication of a private

1. Article III, Section 1 of the NASD Rules provides that:

   A member, in the conduct of his business, shall observe high standards of commercial honor and just and equitable principles of trade.

   Article III, Section 2 of the NASD Rules provides:

   In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and to his financial situation and needs.

   Article III, Section 18 provides:

   No member shall effect any transaction in, or induce the purchase or sale of, any security by means of any manipulative, deceptive, or other fraudulent device or contrivance.

right of action under NASD Rules. The Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975), proposed three considerations for making such a determination: (1) the existence of a special class for whose benefit the legislation was created; (2) the legislative intent to create or deny such a remedy; and (3) the compatability of a private remedy with the underlying legislative scheme. Recent decisions, specifically *Touche Ross, supra*, and *Transamerica, supra*, have instructed that the greatest emphasis must lie on the second of these elements–the legislative intent.

In this case, the other two *Cort* factors, although now of lessened significance, militate against the implication of a private right of action. As discussed above, the 1975 Act was enacted for the protection of the national economy and not specifically for the benefit of individual investors. As to the third *Cort* factor, it is difficult to imagine what conduct could fall into the interstices, if any, between the recognized private remedies available under federal securities laws and the common law causes of action.

Addressing the focal point of the analysis, consideration of the statutory language and legislative intent, we are met by congressional silence in the 1975 Act on the question of private remedies. As Mr. Justice Rehnquist wrote in *Touche Ross & Co. v. Redington, supra*, 442 U.S. at 578, 99 S.Ct. at 2490, "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best."

Plaintiffs have not met their burden of establishing a private right of action merely by arguing that in 1975 Congress gave the SEC authority to review self–regulatory rules for conformity with the 1934 Act. Such self–regulatory rules generally carry their own sanctions, such as suspension or revocation of membership in the self–regulatory body itself. Congressional concern with avoiding possible conflicts between the dictates of the federal securities laws and the rules of organizations such as NASD is far removed from an intention to make the members of NASD answerable in money damages to investors for a violation of a NASD rule. I must agree with the Ninth Circuit that, "[b]ased upon the standards in *Touche Ross* and *Transamerica*, . . . there is no implied right of action for an NASD rule violation." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980).

Additionally, the parties have not brought to the Court's attention, nor has independent research found any New York cases which uphold a state cause of action based on a violation of the NASD Fair Practices Rules. Because of the existence of both federal and state remedies in situations such as the one at hand, I can only conclude that the courts of New York, if faced with the question, would also refuse to recognize a cause of action based on alleged violations of the NASD Rules. Consequently, that claim must be dismissed not only as a federal claim, but also as a pendent state claim.

Bache's motion to dismiss is denied as to the claim under § 10(b) of the 1934 Act and the common law claims of fraud and breach of fiduciary duty. Its motion is granted as to the claims under the NASD Fair Practices Rules.