**Harley Ray EMMONS, Jr., Plaintiff,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Defendants.**

No. C-3-81-212.

United States District Court,
S. D. Ohio, W. D.

Jan. 20, 1982.

Timothy N. Tye, Dayton, Ohio, for plaintiff.

Joseph C. Winner, Columbus, Ohio, for defendants.

DECISION AND ENTRY ON PENDING MOTIONS; DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS SUSTAINED IN PART AND OVERRULED IN PART; PLAINTIFF'S MOTION TO MODIFY PRELIMINARY PRETRIAL CONFERENCE ORDER SUSTAINED

RICE, District Judge.

This case involves alleged violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (1934 Act), the rules of the National Association of Securities Dealers (NASD) and the New York Stock Exchange (NYSE), and alleged liability under pendent state tort law. Two motions are currently pending before this Court, to wit:

1) Defendants' motion for a judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), with reference to Counts II, III, IV (in part) and VI; and

2) Plaintiff's motion to modify the preliminary pretrial conference order filed on May 22, 1981.

For the reasons set forth below, the Defendants' motion for a judgment on the pleadings is sustained, with respect to Counts II, III, IV (in part) and VI (in part) of the complaint, and overruled, with respect to Count VI (in part) of the complaint. In addition, Plaintiff's motion to modify the preliminary pretrial conference order is sustained.

## I.  FACTUAL BACKGROUND

The complaint filed by the Plaintiff herein is divided into six counts. Count I alleges that Plaintiff opened an account with Defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) on February 1, 1979, and that Defendant Richard G. Golod,

an employee of Merrill Lynch, was Plaintiff's stockbroker. The first count further alleges that despite Plaintiff informing Golod of his interest in a "conservative investment strategy," Golod exploited Plaintiff's lack of knowledge about securities to gain "effective control" over the account, and proceeded to intentionally, fraudulently, and maliciously "churn" the account. As the complaint states, "churning" an account involves excessive purchasing and selling of volatile and speculative securities for the purpose of generating commissions, without regard for the financial resources and objectives of the owner of the account. Said acts are alleged to have violated § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1981).

Count II alleges that the Defendants recommended to Plaintiff the purchase of "speculative and volatile investments," which were unsuitable in light of Plaintiff's financial situation, and were made without reasonable grounds for believing in the suitability of said recommendations. These acts are alleged to have violated Article III, Section 2 of the NASD Rules of Fair Practice,[1] and NYSE Rule 405.[2]

Count III alleges that Plaintiff opened a margin account with Merrill Lynch on February 1, 1979, which account permitted Plaintiff to purchase securities on credit. Defendants at various times, the complaint further alleges, recommended and executed orders which rendered Plaintiff's account in violation of the applicable margin requirements found in § 7(c) of the 1934 Act, 15 U.S.C. § 78g(c), and the regulation implementing § 7(c), Federal Reserve Board Regulation T, 12 C.F.R. §§ 220.1 *et seq.*

Count IV alleges that all acts of Golod were within the course and scope of his

---

[1]  In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.

Art. III, § 2, NASD Rules of Fair Practice.

[2]  NYSE Rule 405 provides, in pertinent part:

Every member organization is required through a general partner, a principal executive officer or a person or persons designated under the provisions of Rule 342(b)(1) to

(1) Use due diligence to learn the essential facts relative to every customer, every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.

employment with Merrill Lynch, and that Merrill Lynch knew, or should have known, of said acts. The fourth count further alleges that Merrill Lynch failed to maintain and enforce a system of internal supervision over Golod, which said failure violated its duty as a "control person" under the 1934 Act, and the duties imposed by Article III, Section 27 of the NASD Rules of ·Fair Practice.[3]

Finally, Counts V and VI set forth several pendent state law claims. Count V alleges that Golod made a variety of misrepresentations to Plaintiff concerning the account, to successfully induce Plaintiff to purchase more securities. The last count alleges that as a result of the "intentional, willful, and wanton conduct of the Defendants, Plaintiff has suffered great mental anguish and emotional distress . . . ."

The complaint properly invoked the jurisdiction of this Court pursuant to § 27 of the 1934 Act, 15 U.S.C. § 78aa, and this Court's pendent jurisdiction over state law issues, *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## II. MOTION FOR JUDGMENT ON THE PLEADINGS IS SUSTAINED IN PART AND OVERRULED IN PART

Defendants filed an answer to complaint, denying the allegations of unlawful acts, and also filed a motion for a judgment on the pleadings, pursuant to Rule 12(c), with respect to Counts II, III, IV (in part), and VI of the complaint. In a Rule 12(c) motion, this Court must accept as true all well-pleaded allegations of the complaint. *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1034–35 (6th Cir. 1979). With this standard in mind, the Court now considers the arguments of the Defendants with respect to the counts addressed by the motion.[4]

### a) Count II

■ The second count alleges that the Defendants violated Section 2 of the NASD Rules of Fair Practice, which mandates that NASD members only make recommendations on the purchase or sale of securities which are "suitable" for the customer, and NYSE Rule 405, which requires NYSE members to use "due diligence to learn the essential facts" relative to each customer, account, and order. *See* footnotes 1–2 *supra*. However, neither these rules regulating the members of private organizations, nor the Congressional statutes under which they were implemented, expressly authorize private actions for violations of said rules. Hence, Plaintiff is seeking to *imply* private rights of actions under the relevant Congressional statutes.

---

**3.** Section 27 provides, in pertinent part:

(a) Each member shall establish, maintain and enforce written procedures which will enable it to supervise properly the activities of each registered representative and associated person to assure compliance with applicable securities laws, rules, regulations and statements of policy promulgated thereunder and with the rules of this Association.

(b) Final responsibility for proper supervision shall rest with the member. The member shall designate a partner, officer or manager in each office of supervisory jurisdiction, including the main office, to carry out the written supervisory procedures. A copy of such procedures shall be kept in each such office.

(c) Each member shall be responsible for keeping and preserving appropriate records for carrying out the member's supervisory procedures. Each member shall review and endorse in writing, on an internal record, all transactions and all correspondence of its registered representatives pertaining to the solicitation or execution of any securities transaction.
Art. III, § 27(a)–(c), NASD Rules of Fair Practice.

**4.** While Defendants' motion is made pursuant to Rule 12(c), the memorandum setting forth said motion asks this Court to "dismiss" the applicable Counts for failure "to state claims upon which relief can be granted," which, of course, is language derived from Fed.R.Civ.P. 12(b)(6). While this Court will treat said motion as being made pursuant to Rule 12(c), the Court notes that the standard of review for Rule 12(c) motions is considered to be virtually identical to the standard employed for Rule 12(b)(6) motions. *See* C. Wright & A. Miller, *Federal Practice and Procedure*, § 1357 at 595, § 1368 at 691 (1969). *See also Amersbach v. City of Cleveland, supra*, 598 F.2d at 1038 (Rule 12(c) motion can be treated as a Rule 12(b)(6) motion).

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth the following factors a court must consider in deciding if the implication of a private cause of action under a statute is proper: (1) whether the plaintiff is one for whose especial benefit the statute was enacted; (2) whether there is any indication of congressional intent to create a private remedy; (3) whether a private remedy is consistent with the legislative scheme; and (4) whether it would be inappropriate to infer a federal cause of action in an area traditionally relegated to state law. *Id.* at 78, 95 S.Ct. at 2087. More recently, the Supreme Court and the Sixth Circuit have emphasized that the second factor, legislative intent, is the most significant. *See, e.g., California v. Sierra Club*, 451 U.S. 287, 298, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981); *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 23–24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979); *Gilman v. Federal Deposit Ins. Corp.*, 660 F.2d 688, 692 (6th Cir. 1981); *Amalgamated Transit Union v. Jackson Transit Authority*, 650 F.2d 1379, 1384 (6th Cir. 1981).

The courts which have considered whether, in light of the *Cort v. Ash* criteria, a private right of action should be implied under the NASD rules have answered the question in the negative. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980); *Colman v. D. H. Blair & Co.*, 521 F.Supp. 646, 653–54 (S.D.N.Y.1981); *Klitzman v. Bache Halsey Stuart Shields, Inc.*, 499 F.Supp. 255, 258–59 (S.D.N.Y.1980). This Court is in agreement with the reasoning and results of these cases.

The argument that an alleged NASD rule violation gives rise to a private right of action is grounded primarily on § 15A(b)(6) of the 1934 Act, 15 U.S.C. § 78*o*–3(b)(6), which requires a securities association, such as the NASD, to adopt disciplinary rules. However, § 15A(b)(6) "neither confers rights on private parties nor proscribes any conduct as unlawful," *Touche Ross v. Redington*, 442 U.S. 560, 569, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979), and cannot, by its terms, indicate a legislative intent to create a private cause of action. Further-

more, there is simply no hint of Congressional intent regarding private causes of action in the legislative history of statutes regulating the NASD. *Klitzman, supra,* 499 F.Supp. at 258. Finally, sections 9(e), 16(b), and 18 of the 1934 Act expressly create private rights of action, suggesting that the failure to provide for private actions for violation of NASD rules was not an oversight (i.e., that had Congress intended to do so, it would have done so in express terms). *Transamerica, supra,* 444 U.S. at 19–21, 100 S.Ct. at 247; *Jablon v. Dean Witter & Co., supra,* 614 F.2d at 681. The latter point is buttressed by the statutory scheme regulating securities associations, which provides that the NASD may suspend or otherwise discipline its own members, 15 U.S.C. § 78*o*–3(b)(7)–(8), again suggesting that Congress selected this as the exclusive means of enforcement. *Colman, supra,* 521 F.Supp. at 654.

In short, Plaintiff has failed to satisfy the second and third *Cort v. Ash* factors, in that there is no indication of Congressional intent to create a private remedy for violation of NASD rules, and a private remedy would be inconsistent with the legislative scheme. A discussion of the first and fourth *Cort v. Ash* factors is thus unnecessary. Plaintiff's reliance on *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 181–82 (2d Cir.), *cert. denied*, 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966) (Friendly, J.), which held that, in some circumstances, private causes of action could be implied under NASD rules, is misplaced, since *Colonial* has been superseded by *Cort v. Ash* and more recent Supreme Court decisions. *Colman, supra,* 521 F.Supp. at 654–55. For these reasons, the motion with respect to the cause of action under the NASD rules must be, and is, sustained.

A virtually identical analysis also leads to the conclusion that a cause of action cannot be implied under NYSE Rule 405. The courts which have recently considered the question have been virtually unanimous in ruling that a private remedy cannot be implied under Rule 405. *See Jablon v. Dean Witter & Co., supra,* 614 F.2d at 679–81;

*Colman, supra; Picard v. Wall Street Discount Corp.* 526 F.Supp. 1248 [1981 Current Binder] Fed.Sec.L.Rep. (CCH) ¶ 98, 364 (S.D.N.Y.1981); *Baselski v. Paine, Webber, Jackson & Curtis, Inc.,* 514 F.Supp. 535 (N.D.Ill.1981); *Pittsburgh Terminal v. Baltimore & Ohio Ry. Co.,* 509 F.Supp. 1002 (W.D.Pa.1981); *Birotte v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 468 F.Supp. 1172 (D.N.J.1979). *But see, Smith v. Smith, Barney, Harris, Upham & Co., Inc.,* 505 F.Supp. 1380 (W.D.Mo.1981) (permitting private cause of action under Rule 405, with no reference to *Cort v. Ash* or later Supreme Court decisions).

As with the NASD Rules, the argument for a private cause of action under the NYSE Rules is premised on the Congressional statute governing the rules of the organization. Section 6(b) of the 1934 Act, 15 U.S.C. § 78f(b), requires securities exchanges, such as the NYSE, to adopt rules promoting "just and equitable principles of trade." Once again, however, § 6(b) "neither confers rights on private parties nor proscribes any conduct as unlawful," there is no legislative history under the section concerning Congress' view of a private remedy, and a private remedy would conflict with the apparent desire of Congress to permit the NYSE to enforce its own rules, 15 U.S.C. § 78f(b)(6)–(7). *See Jablon v. Dean Witter & Co., supra; Colman, supra,* 521 F.Supp. at 653–54; *Picard, supra,* 526 F.Supp. at 1251, at 92, 225.

Plaintiff's continued reliance on *Colonial Realty, supra,* which also held that a private remedy could be implied under Rule 405, is of no avail. As previously noted, *Colonial Realty* was a pre-*Cort v. Ash* decision, and

is no longer regarded as controlling by district courts in the Second Circuit. *See Colman, supra; Picard, supra.* Indeed, the author of *Colonial Realty* recently acknowledged that the decision, with regard to Rule 405 violations, has been limited by *Jablon, supra,* and the more recent Supreme Court decisions. *Leist v. Simplot,* 638 F.2d 283, 296 n.11 (2d Cir. 1980), *cert. granted,* 450 U.S. 910, 101 S.Ct. 1346, 67 L.Ed.2d 332 (1981) (Friendly, J.). For the same reason, a decision in the Seventh Circuit which followed *Colonial Realty, Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 410 F.2d 135 (7th Cir.), *cert. denied,* 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969), and which is relied upon by the Plaintiff herein, is no longer regarded as good law in that Circuit. *See Baselski, supra,* 514 F.Supp. at 542.

Once again, Plaintiff has failed to satisfy the second and third *Cort v. Ash* factors, regarding Congressional intent and consistency with the legislative scheme, and a discussion of the other *Cort v. Ash* factors is unnecessary. Hence, the motion with respect to the cause of action under NYSE Rule 405 (and, therefore, the entirety of Count II), must be, and is, sustained.[5]

b) Count III

The third count alleges that the Defendants violated the margin requirement found in § 7(c) of the 1934 Act and Regulation T. Neither the statute nor the regulation provides for private enforcement of the margin requirements. As Plaintiff candidly admits, the Sixth Circuit recently held that no private right of action could be

---

5. Plaintiff contends that a holding by this Court that no private right of action exists under NYSE Rule 405 or the NASD Rules "would not be fatal" to Count II of the complaint. Specifically, Plaintiff argues that Count II incorporates by reference (Complaint, ¶ 11.) the allegations of § 10(b) and Rule 10b–5 violations found in Count I, and that the acts alleged in Count II also amount to violations of § 10(b) and Rule 10b–5.

   Plaintiff's contention is not persuasive. Nothing is added by combining NYSE and NASD Rule violations with a Rule 10b–5 claim, when the NYSE and NASD Rules do not give

use to private rights of action. *Utah State Univ. v. Bear, Stearns, & Co.,* 549 F.2d 164, 170–71 (10th Cir.), *cert. denied,* 434 U.S. 890, 98 S.Ct. 264, 54 L.Ed.2d 176 (1977). Moreover, even if Plaintiff was correct on this point, it would, as a practical matter, make no difference, since the recommendations of "speculative and volatile investments," the only unlawful acts alleged in Count II, are also alleged in Count I.

   Thus, this Court deems it appropriate to sustain the motion, with respect to Count II, in its entirety.

implied under § 7(c) and Regulation T. *Gutter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 1194 (6th Cir. 1981), *petition for cert. filed*, 50 U.S.L.W. 3467 (U.S. Oct. 7, 1981). Hence, Defendants' motion with respect to Count III must be, and is, sustained.

### c) Count IV

Count IV alleges, in part, that Merrill Lynch violated Article III, Section 27 of the NASD Rules of Fair Practice. For the reasons set forth earlier in this opinion, no private cause of action can be implied under the NASD Rules or the applicable Congressional statutes. Therefore, Defendants' motion is sustained in part, to the extent that Count IV rests on alleged violations of the NASD Rules.

### d) Count VI

The sixth and final count of the complaint alleges that the "intentional, willful, and wanton conduct of the Defendants" caused Plaintiff to suffer "great mental anguish and emotional distress...." Defendants argue that, for two reasons, the motion should be sustained with respect to Count VI. First, recovery under the 1934 Act is limited to actual damages. Second, recovery for mental distress is not permitted under Ohio law, based on the circumstances of the case herein.

█ Defendants' first argument is well taken. Section 28(a) of the 1934 Act, 15 U.S.C. §. 78bb(a), states that plaintiffs cannot recover "a total amount in excess of *actual damages* on account of the act complained of." (emphasis added). This language has been construed to forbid the awarding of nonpecuniary relief, such as punitive damages, *Carras v. Burns*, 516 F.2d 251 (4th Cir. 1975), or damages for mental distress, *Greitzer v. United States Nat'l Bank*, 326 F.Supp. 762 (S.D.Cal.1971). However, such damages may be alleged and recovered *if* allowable under state law and *if* state law violations are joined to an action premised on violations of the 1934 Act. *See Miley v. Oppenheimer & Co., Inc.*, 637 F.2d 318, 329 (5th Cir. 1981); *Nye v. Blyth*

*Eastman Dillon & Co., Inc.*, 588 F.2d 1189, 1200 (8th Cir. 1978).

█ Plaintiff herein has joined state law claims to the 1934 Act allegations, which said claims are, apparently, based on fraud and intentional infliction of emotional distress. In general, Ohio law permits the recovery of punitive or nonpecuniary damages for intentional, willful, and wanton acts, or by malice inferred from conduct and surrounding circumstances. *Wood v. Stark Tri-County Building Trades Council*, 473 F.2d 272, 274 (6th Cir. 1973); *Rubeck v. Huffman*, 54 Ohio St.2d 20, 374 N.E.2d 411 (1978)(per curiam). Contrary to Defendants' second argument, said damages *are* recoverable under Ohio law for malicious fraud, *Logsdon v. Graham Ford Co.*, 54 Ohio St.2d 336, 376 N.E.2d 1333 (1978) (per curiam), or for intentional infliction of mental distress, if contemporary physical injury was inflicted *or* there was malice on the part of the wrongdoer. *Umbaugh Pole Building Co., Inc. v. Scott*, 58 Ohio St. 282, 390 N.E.2d 320 (1979); *Columbus Finance v. Howard*, 42 Ohio St.2d 178, 327 N.E.2d 654 (1975). Plaintiff herein has sufficiently alleged malice on the part of the Defendants, so as to have the opportunity, depending upon the facts shown at trial, to recover punitive or exemplary damages for fraud and infliction of mental distress.

For these reasons, Defendants' motion with respect to Count VI is sustained in part, to the extent that Plaintiff seeks other than actual damages for violations of the 1934 Act, and is overruled in all other respects.

### III. MOTION TO MODIFY THE PRELIMINARY PRETRIAL CONFERENCE ORDER IS SUSTAINED

On May 22, 1981, this Court filed a Preliminary Pretrial Conference Order in the action herein. Said Order required the Plaintiff to reveal to the Defendants the identity of his expert witnesses on or before November 1, 1981, and required the Defendants to reveal the identity of their expert witnesses to Plaintiff by December 15,

1981 (Order at p. 2). Plaintiff has now moved to extend this period, since, he asserts, prior to the ruling of the Court on Defendants' Rule 12(c) motion, "it is not possible for Plaintiff to determine what, if any, expert witnesses will be needed at trial or what the nature of their testimony would be."

Given the date of the decision on Defendants' motion herein, and since Defendants have not opposed the motion to modify, said motion to modify the preliminary pretrial conference order will be sustained.

Counsel listed below will take note that a telephone conference will be had at 8:55 a.m. on Wednesday, January 27, 1982, for the purpose of discussing the specifics of the modification of the Preliminary Pretrial Conference Order.

## IV. CONCLUSION

In summary, for the aforestated reasons, Defendants' motion for a judgment on the pleadings, pursuant to Rule 12(c), is sustained with respect to Counts II, III, IV (in part), and VI (in part) of the complaint, and overruled in all other respects. In addition, Plaintiff's motion to modify the Preliminary Pretrial Conference Order is sustained, in the manner set forth in this opinion.