James T. O'Hare, Kenneth R. Jones, Eric R. Fenichel, O'Hare, Sherrard & Roe, Nashville, Tenn., for plaintiff.

John R. Branson, W. Michael Richards, Heiskell, Donelson, Bearman, Adams, Williams, & Kirsch, Memphis, Tenn., for defendants.

## CHARTER HOUSE, INC.

v.

## FIRST TENNESSEE BANK, N.A. and William H. Kelly.

No. 3-87-0729.

United States District Court, M.D. Tennessee, Nashville Division.

May 4, 1988.

### MEMORANDUM

JOHN T. NIXON, District Judge.

This action concerns alleged securities fraud and related claims in connection with the sale of municipal bonds. Before the Court is a motion for partial dismissal for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The facts, as alleged in the complaint and taken as true for purposes of this motion, see, e.g., Nurse Midwifery Associates v. Hibbett, 549 F.Supp. 1185, 1187 (M.D.Tenn. 1982), are as follows: Plaintiff, Charter House, Inc. ("Charter House"), allegedly relied on defendant William H. Kelly ("Kelly"), an employee of defendant First Tennessee Bank National Association ("the Bank"), to choose investments for Charter House. Charter House claims that it instructed Kelly to choose secure, short-term, tax exempt municipal bonds in which Charter House could invest funds held by it in trust. Kelly is alleged to have disregarded those instructions, investing Charter House's funds in long-term zero coupon municipal bonds without Charter House's consent. The bonds declined in value and Charter House sold them at a loss of $185,-750. Charter House alleges that this conduct by Kelly gives rise to causes of action against him for securities fraud, common law fraud, Racketeer Influenced and Corrupt Organizations Act ("RICO") violations, breach of fiduciary duty, and violations of the Municipal Securities Rulemak-

ing Board ("MSRB") Rule G–19. First Tennessee allegedly is liable to Charter House under the theory of respondeat superior or, alternatively, under the securities fraud claims, as a "controlling person." Defendants now move for dismissal of the RICO claim against the Bank and of the claims against both defendants for violation of MSRB Rule G–19.

### 1. *RICO Claim Against the Bank*

Defendants state that, although the complaint's language is unclear, they assume that the RICO count is intended to apply to the Bank as well as to Kelly. Thus, defendants seek dismissal of the count against the Bank. Plaintiff, however, has asserted its RICO claim only against Kelly, reserving the right to add a RICO claim against the Bank in the future. Therefore, the Court need not address the substance of defendants' motion to dismiss the Bank on this claim.

### 2. *Claims Against the Bank and Kelly for MSRB Rule G–19 Violation*

Motions to dismiss for failure to state a claim should be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *see Westlake v. Lucas,* 537 F.2d 857, 858–59 (6th Cir. 1976). With this standard in mind, the Court now turns to an examination of the legislation in question.

Section 15B(c)(1) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78o–4(c)(1), which prohibits a municipal securities dealer from violating a rule of the MSRB, provides as follows:

> No broker, dealer, or municipal securities dealer shall make use of the mails or any means or instrumentality of interstate commerce to effect any transaction in, or to induce or attempt to induce the purchase or sale of, any municipal security in contravention of any rule of the [MSRB].

Charter House has alleged that Kelly and the Bank, as Kelly's employer, are liable for Kelly's alleged violations of MSRB Rule G–19, a combination "suitability" and "know your customer" rule. That rule provides, in pertinent part, as follows:

Suitability of Recommendations and Transactions; Discretionary Accounts

**Rule G–19.** (a) *Account Information.* Each broker, dealer and municipal securities dealer shall obtain at or before the completion of a transaction in municipal securities with or for the account of a customer a record of the information required by rule G–8(a)(xi).

(b) *Knowledge of Customer.* Each broker, dealer or municipal securities dealer at or before recommending the purchase, sale or exchange of a municipal security to a customer shall have knowledge or shall inquire about the customer's financial background, tax status, and investment objectives and any other similar information.

(c) *Suitability of Recommendation.* No broker, dealer or municipal securities dealer shall recommend the purchase, sale or exchange of a municipal security to a customer unless such broker, dealer or municipal securities dealer, after reasonable inquiry,

(i) has reasonable grounds based upon information available from the issuer of the security or otherwise for recommending a purchase, sale or other transaction in the security; and

(ii)(A) has reasonable grounds to believe and does believe that the recommendation is suitable for such customer in light of the customer's financial background, tax status, and investment objectives and any other similar information concerning the customer known by such broker, dealer or municipal securities dealer, or

(B) has no reasonable grounds to believe and does not believe that the recommendation is unsuitable for such customer if all of such information is not furnished or known.

Notwithstanding the foregoing, if a broker, dealer or municipal securities dealer determines that a transaction in munici-

pal securities or in specific municipal securities would not be suitable for a customer and so informs such customer, the broker, dealer or municipal securities dealer may thereafter respond to the customer's requests for investment advice concerning municipal securities generally or such specific securities and may execute transactions at the direction of the customer.

MSRB Rule G–19, *reprinted in* Fed.Sec.L. Rep. (CCH) ¶ 3591. Plaintiff has alleged that defendants wilfully violated this rule on at least nine occasions over the course of more than three months as part of a scheme to defraud plaintiff.

The issue before this Court is whether section 15B(c)(1) of the Exchange Act carries with it a private right of action for violation of MSRB Rule G–19. This is a matter of statutory construction, the ultimate question in the analysis being the intent of Congress in enacting the statute. *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis,* 444 U.S. 11, 15–16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979); *Gilman v. FDIC,* 660 F.2d 688, 692 (6th Cir.1981). Absent a finding that the statute was promulgated with the intention of creating the right of action asserted, Charter House's complaint fails to state a claim. *Klock v. Lehman Brothers Kuhn Loeb, Inc.,* 584 F.Supp. 210, 217 (S.D.N.Y. 1984).

The analysis begins with a review of the language of the statute itself. *TAMA,* 444 U.S. at 16, 100 S.Ct. at 245. The statute does not establish expressly a private right of action for damages for an alleged violation of any MSRB rule. Thus, the next step in the analysis is an examination of the legislative history, *see id.* at 18, 100 S.Ct. at 246, which also does not provide expressly for a private right of action. Thus, the Court must determine whether the requisite congressional intent is implied "in the language or structure of the statute, or in the circumstances of its enactment." *Id.*

Prior to 1975, most of the conduct of municipal securities professionals, including banks, was unregulated because municipal securities were included within the definition of an "exempted security" under the pre–1975 version of section 3(a)(12) of the Exchange Act. Moreover, banks are expressly excluded from the definitions of the terms "broker" and "dealer" and, therefore, are not subject to the broker-dealer regulatory provision of section 15 of the Exchange Act, 15 U.S.C. § 78o. Further, banks are not members of the National Association of Securities Dealers ("NASD"), the New York Stock Exchange ("NYSE"), or any other self-regulatory organization established pursuant to section 15A of the Exchange Act, 15 U.S.C. §§ 78f and 78o–3. Under prior law, for example, Securities and Exchange Commission ("SEC") rules promulgated pursuant to section 15(c)(1), 15 U.S.C. § 78o (c)(1), defining manipulative, deceptive, or otherwise fraudulent devices and contrivances, did not reach the municipal securities conduct of banks. *See* S.Rep. No. 75, 94th Cong., 1st Sess. 3, 42–43 (1975) [hereinafter "Senate Report"], *reprinted in* 1975 U.S.Code Cong. & Admin.News 179, 220–21 [hereafter "U.S.C.C.A.N."].

Congress enacted section 15B in 1975 as part of a comprehensive set of amendments to the Exchange Act known as the Securities Acts Amendments of 1975 ("the Amendments"). The Amendments were intended to "create a federal mechanism for the regulation of transactions in [municipal securities] and brokers and dealers and banks engaged in a municipal securities business." Senate Report, *supra,* at 3, U.S.C.C.A.N. at 182. The legislative history of section 15B indicates that Congress intended to curb the abuses of municipal securities professionals by subjecting them to the then-existing regulatory scheme governing brokers and dealers.

In recognition of what the Senate Banking, Housing and Urban Affairs Committee described as a "disturbing pattern of professional misconduct that was characterized by unconscionable mark-ups, churning of customers' accounts, misrepresentations concerning the nature and value of munici-

pal securities, disregard of suitability standards, and scandalous high-pressure sales techniques," Congress decided to bring the activities of municipal securities professionals, including banks, under "the same regulatory scheme that applied to other securities activity." Senate Report, *supra*, at 43, U.S.C.C.A.N. at 221. To this end, Congress created the MSRB to establish high standards of practice and trade applicable to all municipal securities professionals. The MSRB performs this function by promulgating rules, including the "suitability" and "know your customer" rule allegedly violated in this case.

The Supreme Court's analysis in determining whether private rights of action can be implied under other sections of the federal securities laws is instructive in the instant case. In *Touche Ross & Co. v. Redington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Supreme Court held that no private right of action exists under section 17(a) of the Exchange Act, 15 U.S.C. § 78q(a), and the regulations promulgated thereunder, which require securities brokerage firms to file reports of their financial condition. The Court first examined the statutory language and noted that the statute did not "purport to create a cause of action in favor of anyone." *Id.* at 569, 99 S.Ct. at 2485. As in the instant case, the argument in *Touche Ross* was that because private rights of action exist under other securities statutes, and because Congress failed to disclaim expressly any intent to create such a right in the legislative history of the section in question, Congress must have meant to establish a private right of action by implication. That argument was rejected. *Id.* at 571, 99 S.Ct. at 2486. The Court also rejected the argument that a private right to action must be implied to further the remedial purposes of the statutory framework, stating that that argument was "unavailing." *Id.* at 577–78, 99 S.Ct. at 2490.

As the Supreme Court reiterated, " 'the fact that a federal statute has been violated and some person has been harmed does not automatically give rise to a private cause of action in favor of that person.' " *Id.* at 568, 99 S.Ct. at 2485 (quoting *Can-*

*non v. University of Chicago*, 441 U.S. 677, 688, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979)). Likewise, "the mere fact that [a statute] was designed to provide protection for [the plaintiffs] does not require the implication of a private damages action in their behalf." *Touche Ross*, 442 U.S. at 578, 99 S.Ct. at 2490.

In *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the issue was whether the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1, *et seq.*, which was enacted to prevent abuse in the investment advisors industry conferred a private right of action. Section 206 of the statute makes it unlawful for any investment advisor, by use of the mails or any instrumentality of interstate commerce, to violate a rule of the SEC. *See* 15 U.S.C. § 80b–6. Section 215 of the statute, 15 U.S.C. § 80b–15, provides that contracts whose formation or performance would violate the statute shall be void as to the rights of any violator or a violator's successor in interest to the contract. The plaintiffs argued that as clients of the advisors they were the intended beneficiaries of the statute and should have been allowed a private right of action for damages. The Court held that a limited private right of action is fairly implied by the language of section 215, allowing for injunctive relief, rescission, and restitution in connection with such contracts. *TAMA*, 444 U.S. at 18–19, 100 S.Ct. at 246–247.

However, while conceding that the plaintiffs were the intended beneficiaries of the statute, the Court held that no private right of action exists under section 206 because there is no evidence of congressional intent to create one. *Id.* at 19–24, 100 S.Ct. at 246–249. The Court reasoned that section 206 "simply proscribes certain conduct, and does not in terms create or alter any civil liabilities." *Id.* at 19, 100 S.Ct. at 247. Noting that Congress had provided both judicial and administrative means for enforcing compliance with section 206, the Supreme Court concluded that "where a statute expressly provides a particular remedy or remedies, a court must be chary of

reading others into it." *Id. See also Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed. 2d 500 (1981).

Following the reasoning of *Touche Ross* and *TAMA,* this Court is unwilling to accept plaintiff's argument that because Congress did not express an intent to deny a private right of action, this Court should infer one. "[I]mplying a private right of action on the basis of congressional silence is a hazardous enterprise, at best." *Touche Ross,* 442 U.S. at 571, 99 S.Ct. at 2486. Nor does plaintiff's invocation of the remedial purposes of section 15B justify reading that section " 'more broadly than its language and the statutory scheme reasonably permit.' " *Id.* at 578, 99 S.Ct. at 2490 (quoting *SEC v. Sloan,* 436 U.S. 103, 116, 98 S.Ct. 1702, 1711, 56 L.Ed.2d 148 (1978)). As with the statute at issue in *TAMA,* section 15B(c)(1) does not in terms create civil liabilities, but merely proscribes certain conduct for which specific judicial and administrative means of enforcement have been provided by Congress. *See* 15 U.S.C. §§ 78o–4(c)(2)–(5), 78u. Thus, detecting no express or implicit private right of action from the statute's language, structure, legislative history, or circumstances of enactment, the Court FINDS that no such right of action exists under section 15B(c)(1) of the Exchange Act.

The Court finds further support for this conclusion in cases in which courts have refused to infer a private right of action for plaintiffs allegedly injured by violations of "suitability" and "know your customer" rules promulgated by other bodies to control the activities of securities professionals. *See, e.g., Jablon v. Dean Witter & Co.,* 614 F.2d 677 (9th Cir.1980) (no private right of action implied under statute authorizing the NYSE "know your customer" rule and the NASD "suitability" rule); *Thompson v. Smith Barney, Harris Upham & Co.,* 709 F.2d 1413, 1419 (11th Cir. 1983) (same); *Kirkland v. E.F. Hutton and Co.,* 564 F.Supp. 427, 443 (E.D.Mich. 1983) (no implied private cause of action under NASD or NYSE rules); *Klock v. Lehman Brothers Kuhn Loeb, Inc.,* 584 F.Supp. 210, 216–18 (S.D.N.Y.1984) (same);

*Emmons v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 532 F.Supp. 480, 482–84 (S.D.Ohio 1982) (same); *Mercury Investment Co. v. A.G. Edwards and Sons,* 295 F.Supp. 1160, 1163 (S.D.Tex.1969) (violation of NASD "suitability" rule does not give rise to implied private right of action under federal securities laws); *Hecht v. Harris, Upham & Co.,* 283 F.Supp. 417, 430–31 (N.D.Cal.1968), *modified on other grounds,* 430 F.2d 1202 (9th Cir.1970) (same).

Plaintiff contends that cases discussing the NYSE and NASD rules are inapposite, pointing out that unlike those self-regulatory organizations, which have primary enforcement authority to sanction violation of their rules, the MSRB possesses no authority to enforce its rules. Plaintiff argues further that although Rule G–19 prohibits negligent conduct, the bodies that are authorized to enforce MSRB rules against banks—the SEC and the Comptroller of the Currency—may sanction municipal securities dealers only for willful violations. *See* 15 U.S.C. § 78o–4(c)(2)–(5). Thus, plaintiff contends, without private rights of action to police nonwillful violations of MSRB rules, a wide range of negligent misconduct will go undeterred.

The Court, however, finds that sufficient regulatory authority exists to deal with nonwillful MSRB rule violations. Although a private right of action is not available to plaintiff, the SEC has authority to enjoin violators of MSRB rules from all such violations, whether negligent or otherwise. *See* 15 U.S.C. § 78u. In sum, this Court can find no indication that Congress intended for the MSRB's version of a suitability rule to be enforced any differently from the suitability rules propounded by the NASD and the NYSE. Indeed, the legislative history indicates that Congress, in empowering the MSRB to formulate rules governing the municipal securities industry, believed that it was giving the MSRB "ample authority to deal with the problems of the municipal securities industry." Senate Report, *supra,* at 48, U.S.C. C.A.N. at 226. The creation of the complex regulatory scheme and enforcement au-

thority is evidence in itself that Congress did not intend to create private remedies. *See Emmons,* 532 F.Supp. at 483. The possible existence of potential gaps in coverage would not be sufficient to indicate intent by Congress to create a private cause of action. The "necessity" of implying a private remedy is of "little relevance." *Touche Ross,* 442 U.S. at 575, 99 S.Ct. at 2489.

As the Supreme Court concluded in *Touche Ross,* "[the] ultimate question is one of congressional intent, not one of whether this Court thinks it can improve upon the statutory scheme that Congress enacted into law." *Id.* at 578, 99 S.Ct. at 2490. Finally, the Court notes that in the only reported case addressing whether section 15B(c)(1) of the Exchange Act creates a private right of action, the court held that it does not. In *Redstone v. Goldman, Sachs & Co.,* 583 F.Supp. 74 (D.Mass.1984), the court, citing *Touche Ross, TAMA,* and other relevant Supreme Court precedent, held that no private right of action exists under MSRB Rule G–19.

Having found likewise that no private right of action exists for violation of MSRB Rule G–19, the Court GRANTS defendants' motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure and hereby DISMISSES plaintiff's claims against them under section 15B(c)(1) of the Exchange Act.

## SUMMARY

This action concerns alleged securities fraud and related claims in connection with the sale of municipal bonds by defendants to plaintiff. Defendants have moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of the Racketeer Influenced and Corrupt Organizations Act ("RICO") claim against defendant First Tennessee Bank National Association (the "Bank"), and for dismissal of claims under section 15B(c)(1) of the Securities Exchange Act (the "Exchange Act") against the defendant Bank and William H. Kelly for violation of Rule G–19 of the Municipal Securities Rulemaking Board (the "MSRB"). Because plaintiff has not asserted a RICO claim against the Bank,

the Court does not address defendants' motion to dismiss the Bank on this count. Having found that no private right of action exists under section 15B(c)(1) of the Exchange Act for violations of MSRB Rule G–19, the Court GRANTS defendants' motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure as to the alleged MSRB rule violation and, thus, hereby DISMISSES plaintiff's claims against defendants under section 15B(c)(1) of the Exchange Act.

An Order will be entered in accordance with this Memorandum.